GEORGE V. HOYLE and JOHN K. MYERS, trustees, &c. in place of EDWARD BEMENT, survivor, &c. deceased *vs.* THE PLATTSBURGH AND MONTREAL RAILROAD COMPANY, SAMUEL F. VILAS and others.

The more sensible rule, in regard to what are to be deemed fixtures, seems to be that if articles are essential to the use of the realty, have been applied exclusively to use in connection with it, are necessary for that purpose, and without such or similar articles, the realty would cease to be of value, then they may properly be considered as fixtures, and should pass with it.

The doctrine that the rolling stock of a railroad company in all cases is to be considered as personal property, and as not passing under a mortgage of the road and its appurtenances, not acceded to.

Where it was found by the referee, and was conceded, that a mortgage of its road and franchise, executed by a railroad company, was sufficient to include in the mortgaged property the rolling stock, and the parties intended that the rolling stock and equipments of the road should pass, as a part of the road and as necessary to its use; the object of the mortgage being to provide funds for the building of the road and preparing it for travel, and the intent of the parties was to secure the bondholders by a mortgage on the whole property in the road as used by the company for travel; *Held* that such a construction should be given to the instrument as to include therein the rolling stock, although not expressly named.

The 28th section of the general railroad act, (*Laws of* 1850, *p.* 211,) authorizing railroad corporations to borrow money for the building of their roads, or operating them, and to mortgage all their corporate property and franchises to secure the payment thereof, contemplates a mortgage of all the property, whether land, road, rolling stock or franchise, and warrants the conclusion that it was the intent of the legislature that the whole should be included in one mortgage and treated as a mortgage of the road and its accessories. Such a mortgage need not be treated as a chattel mortgage, and filed as such, in order to give it validity as against judgment creditors.

THIS action was brought to foreclose two mortgages held by certain trustees, (since deceased, for whom the plaintiffs are substituted,) on the railroad and equipments of the Plattsburgh and Montreal Railroad Company. The defendant Vilas alleged in his answer, in substance, that the mortgages had never been filed as chattel mortgages, and that the *rolling stock* had intermediate the giving of the mortgages and the commencement of this suit been sold on execution and bought in by him. Thereupon the

decree (which was made by consent) directed a sale of the mortgaged lands, railroad, buildings, docks, &c. but ordered the referee, before selling the rolling stock in question, to inquire whether it or any part of it was "subject to the lien of the said two mortgages or either, and which of the same." The referee was also ordered to report separately, from time to time, as to any particular subject referred to him, and he or either party had leave to apply at any time for further instructions. The referee subsequently reported, in respect to the matters so at issue between the plaintiffs and Vilas. Both parties excepted to the report: The plaintiffs to the conclusion of law that the mortgages were void as against creditors for want of filing; and to the *final* conclusions of law, that the property ceased upon its purchase by Vilas, to be "subject to the lien" of the plaintiffs' mortgages, and that the plaintiffs have no lien thereon.

The defendant Vilas excepts to the findings as to the cost of the property to him, and the surplus in his hands; and to the conclusion of law that the railroad company had a right to redeem from him because he was a trustee; and to the conclusion that he was a trustee. The exceptions were heard at special term, before Justice SUTHERLAND, who decided that the mortgages, under which the plaintiffs claimed the rolling stock in question, assuming that they are worded so as to cover it, should not be deemed, as to *it*, within the purview or intent of the act of 1833; and that they were not void as to the defendant Vilas, because they were not filed as chattel mortgages in pursuance of that act. And the exceptions of the plaintiffs to the conclusions of law of the referee were sustained, and held to have been well taken. (*See* 47 *Barb.* 104, *S. C.*)

From the decision of the special term, the defendant Vilas appealed to the general term.

*G. M. Beckwith & Son*, for the appellants. The learned Judge, who reviewed the decision of the referee, after

coming to the conclusion, that the rolling stock of a railroad is personal property, says, "that the act (of 1833, requiring chattel mortgages to be filed) was not intended to apply to a mortgage of a railroad and rolling stock on it." With all due respect for the very ingenious argument of the learned judge we beg leave to dissent, and to give briefly a few reasons therefor. He starts by expressing a doubt, whether a domestic or foreign corporation is a resident or a non-resident within section 2 of that act. (*Laws of* 1833, *p.* 402.)

I. A domestic corporation is deemed in law to have a residence in the state, and its residence is to be determined by its place of business. It may not have a domicil, but it has a residence. If it is created by the laws of this state it has a residence at its place of business. (*Pond* v. *The Hudson River R. R. Co.*, 17 *How.* 543. *Conroe* v. *The National Protection Co.*, 10 *id.* 403. *Louisville R. R. Co.* v. *Letson*, 2 *How. U. S.* 479. 2 *Abb. Dig.* 132.) For all purposes, a corporation is deemed in law to be a resident of the state, by which it is created and within which it is doing business. But the learned judge seems to have overlooked the express provision of section 1 of that act, which provides that "every mortgage or conveyance intended to operate as a mortgage of goods and chattels, *hereafter* made, &c. shall be filed," &c. There is no exception. It matters not by whom made. It requires every chattel mortgage, thereafter made, to be filed. The reasons, for requiring it in the case of individuals, apply with equal force to those, given by associations and corporations. It is no answer to say, that the legislature did not have in their mind railroad companies, for it is as clear, that they had in mind those companies, as that they had in mind the case of a married woman, who, at the time of the passage of that act, could not give a chattel mortgage—since that time general laws have been passed, authorizing the creation of corporations for various manu-

facturing and other purposes, that were at the time wholly unknown and which have grown out of the discoveries of science, and demands of society, such as telegraph and express companies and the like. Section 2 prescribes the place of filing. It declares that such mortgages "shall be filed in the several towns and cities of this state, where the mortgagor therein, if a resident of this state, shall reside at the time of the execution thereof, and if *not a resident*, then in the city or town where the property so mortgaged shall be at the time of the execution of such instrument." If, therefore, the above authorities are sound, then the company was for all purposes a resident of Plattsburgh. But if that is not correct, still we insist that the language of the first section required the chattel mortgage to be filed, for it provides that all chattel mortgages *thereafter* given shall be filed; and section 2 required it to be filed in Plattsburgh, where the company's place of business was at the time, if the company was in law a resident of this state, and if *not a resident*, then where the property was. The company was a resident or not. If it was not a resident then the mortgage should have been filed in Plattsburgh. The statute does not use the word "non-resident," but says "if not a resident." If the company did not reside in this state, then it is, in the language of that section, "*not a resident.*" It is clear, that the legislature had in mind all chattel mortgages thereafter given. The then existing evils, intended to be remedied, show, as well as the language used, that such was their intention. If railroad mortgages were not included, then by what rule are other corporations included.

II. The learned judge says, "now a foreign corporation can own and operate a railroad in this state, and if the New York and Erie Railroad was owned and operated by a foreign corporation, and it should mortgage its road and rolling stock, where? in what town or towns or city should the mortgage be filed?" We answer in the language of the

Hoyle *v.* Plattsburgh and Montreal Railroad Company.

statute, " where the property was at the time of the execution of the instrument." The inconvenience to the mortgagee is no answer to the positive requirements of the statute. Many individuals residing in other states are, within my knowledge, carrying on large lumber and iron business in this state, and have large quantities of personal property scattered through different towns and counties, yet no one will say that their mortgages need not be filed in all the towns where the mortgaged property is situated at the time of their execution. Railroad companies are not likely to give small mortgages. If given, they are generally for large sums. Hence the mortgagees in such cases can well afford to be at the expense and trouble of filing their chattel mortgages. But it is further clear, that the legislature intended that such mortgages given by persons or companies, not residing in this state, should be filed, and filed where the property was at the time of the execution thereof, for the first section provides that the mortgage, *or a true copy thereof*, shall be filed. Now why authorize a copy to be filed, unless it was intended to cover the very case put by the learned judge such as property located in different towns. The learned judge says : " Section 3 of the act, providing for a renewal of the mortgage, &c. evidently contemplates a change of residence of the mortgagor, for the copy is to be filed, where the mortgagor then resides." True, but does that apply to any mortgagor, except a resident mortgagor ? clearly not. For suppose a man residing at Alburgh in Vermont, who is carrying on business in this state, and there are in our county many such, should mortgage his personal property in this state, his mortgage would have to be filed in the town where the property was at the time of its execution. And suppose that just before the expiration of the year, such mortgagor should remove from Alburgh to Burlington, Vermont, would it be necessary to file the

copy of the mortgage in Burlington? Most clearly not. The statute means no such thing. It applies only to resident mortgagors, where it says, the copy must be filed in the office of the clerk, where the mortgagor resides. Again, the learned judge says : " A change of residence is scarcely predicable of a railroad corporation." Why not, if its place of business is to be deemed in law its place of residence ? should it change its place of business, it will be very likely notorious. Again the learned judge says : " In the second place I doubt whether a mortgage of a road and rolling stock on it, should, as to rolling stock, be deemed a mortgage of goods and chattels within the intention or provision of the act." If the rolling stock is personal property, then the mortgage is of personal property, as well as of real estate. But it is very easy to express a doubt. What is needed in law is certainty. The learned judge goes on to speak of railroads as something new in 1833, as great public improvements and the like. Grant it. What does that prove? Does it prove, that if I should sell to a railroad company, firewood, iron or cars, and take a mortgage on it, or on other personal property, I need not file it? Why should I not be required to file my mortgage ? Is it enough to to say to me, your mortgage is given by a company, who has built a road of great public improvement, or has constructed something that was new in 1833, therefore you need not file it, but you may keep it a secret, and let the company on the credit of its property obtain credit from others. It will be observed, no duty is imposed on the company after it has given its mortgage, in regard to filing it. That is the mortgagee's duty. Suppose the company should take a chattel mortgage, would it not be required to file it, or a copy to preserve its lien ? The whole argument of the learned judge on that point seems to me to be founded on a mistaken view of the case. I see no good reason, why persons dealing with a railroad company, should not be bound by a general statute, as much as when

dealing with an individual. Again, the learned judge says, in speaking of a certain railroad company: "Their road could not be abandoned or transferred without the consent of the legislature," &c. It may be that such was the case in the instance of the road he refers to; but such was not the case of the Plattsburgh and Montreal Railroad Company. But suppose it was, what does it prove? It certainly does not prove that they could not sell their cars or other personal property and buy others to supply their places. But suppose they could not transfer their road, or do any act, such as giving a mortgage on it, by which it might be taken from them, they could sell their cars, or part of them; hence it is quite clear, that a chattel mortgage might be given on their cars or part of them. The argument, therefore, is to my mind unsound, so far at least as it applies to personal property. The legislature may have supposed railroad companies would not mortgage their roads, but they had no reason to suppose so as to their personal property. Religious corporations cannot sell their real estate without leave of court, but they can mortgage it to secure an honest debt. (*Manning* v. *Moscow Presb. Society*, 27 *Barb.* 52.) *South Bapt. Society* v. *Clapp*, 18 *id.* 35.) The learned judge also expresses the opinion, that such mortgages do not come within the mischief or frauds intended to be prevented or remedied by the act. He remarks that the main purpose of this act of 1833, was to prevent persons obtaining credit, as absolute owners of goods and chattels in their possession, which they had mortgaged. Railroad companies in operating their roads, expend a larger portion of their earnings than any other, except perhaps mercantile. They have occasion to buy large quantities of personal property, to furnish and keep furnished their stations, and supply fuel, iron, cars and their shops. Citizens are constantly dealing with them, as this case shows, by the great number of judgments against this short road. Such roads being appa-

rently in successful business and possessed of a large amount of personal property, by buying or building new cars and other property, obtain a credit of citizens, who, if their mortgages are not filed, have no opportunity to learn their true condition. Mortgages on their real property are generally given soon after their road is built and before their road is half supplied with rolling stock and other necessary things. People do not suppose any thing *more* to be mortgaged than their road. Such was the fact in this case. Had it been known that all their rolling stock was mortgaged, they would not have obtained the credit in half of the cases in which they did. Persons supplying a railroad with the means of operating their road, should have the means of ascertaining whether their property is incumbered. In no case is there a greater necessity of being able to learn the facts. Every road in the country has been mostly built, or at least furnished with rolling stock and the means of operating, on credit. Hence the necessity of a compliance with the statute.

There is no reason why persons taking mortgages from corporations should not be required to file them. There is an impression among the people that large and powerful railroad corporations control almost all the interests of the state and make every thing that opposes their interests or wishes to yield. Nine tenths of the corruption charged on the legislature originates, as it is said, with railroad companies. Many people are alarmed at the power which such roads exert at elections, and in many other respects. Our only hope is that our courts at least will stand between such powerful and unscrupulous institutions and the people, and hold them to the same rules of law that it does individuals.

But the learned judge remarks, that railroad companies could not in 1833, mortgage their franchise without the consent of the legislature. Suppose that be so, that is not the question before the court. Could they then not buy and

sell their personal property? Most certainly they could, before the act of 1850. All corporations had the common law right to buy personal property, necessary to carry out the object of their incorporation, unless expressly prohibited by their charter. (*Beers* v. *Phenix Glass Co.*, 14 *Barb.* 358.) And corporations have power to borrow money necessary to carry on their business; and this they had power to do before the act of 1833; and they have also the necessary power to give obligations for its repayment, *in any form* not expressly prohibited by law. (*Curtis* v. *Leavitt*, 15 *N. Y. Rep.* 9.) If so, then they could mortgage their property, and this must have come within the intention of the legislature. Suppose a railroad company wants land for a depot, and for storing property being transported by them. They make a bargain to buy a lot for that necessary purpose, but not being able to pay down, they buy on credit. Could they not give a mortgage to secure the purchase money? Most clearly they could; for the plain reason that the vendor, if he gave a deed and took back no security for the purchase money, would have an equitable mortgage for the unpaid purchase money as against the company. Certainly the law never forbids a party from doing what it will enforce, to the same extent as if it had never been done. It could not mortgage its franchise without the consent of the legislature, but it could secure its honest debts, not on its franchise, but on its property. If then it could mortgage its real estate, it could also mortgage its personal property. Now a religious corporation cannot sell its real estate without leave of court, but it can mortgage it to secure an honest debt. (27 *Barb.* 52. 18 *id.* 35.) If a party having an honest debt against a railroad company could not take a mortgage, before 1833, on the property of the railroad company with its consent, then certainly it ought not to have the right to obtain a lien by a judgment, but such companies should be treated as receivers. But such is not the law, and never has been.

Then it is clear that railroad companies could mortgage their property before 1833, and especially their personal property, and if so then the legislature intended to require their mortgage of goods to be filed, not by the company, but by the person taking it.

*John N. Whiting*, for the respondent.  I. The rolling stock on this railroad was *not personal*, but *real* property. It is to be regarded as fixures, or in the nature of fixtures, annexed to the land mortgaged.  The question whether it is real or personal property is discussed in three cases in this state, the *Farmers' Loan and Trust Co.* v. *Hendrickson*, (25 *Barb.* 484;) *Stevens* v. *The Buffalo and New York R. R. Co.*, (31 *id.* 590;) and *Beardsley* v. *The Ontario Bank*, (*Id.* 619;) and in this case.  These decisions are as nearly as may be balanced in respect of authority, there being on each side the decision of able jurists, and the unanimous opinion of a general term.

In respect to the disagreement between these authorities, it should be observed that the objections in the two cases in 31st *Barbour* to the positions of the case in 25th *Barbour* apply with as much force to the instances in which it is not denied that the things in dispute were fixtures, as to those in which it is claimed that they were not. The *reductio ad absurdum* so freely resorted to in the cases from the fifth and eighth districts proves too much.  The hop-poles, for example, in *Bishop* v. *Bishop*, (1 *Kern.* 123,) and the manure, in *Goodrich* v. *Jones*, (2 *Hill*, 142,) the log-chain in *Farrar* v. *Stackpole*, (6 *Greenl.* 154,) and the steelyard in *The King* v. *St. Nicholas Gloucester*, (*cited in* 20 *Wend.* 259,) to say nothing of the pigeons, deer, keys, &c. always referred to in fixture cases, were as much subject to be removed, sold, &c. and in point of custom are as often actually removed, sold, &c. as the rolling stock on a railroad.  When so removed, they are " severed;" and by being severed become personal property.  But their capa-

Hoyle *v.* Plattsburgh and Montreal Railroad Company.

city to be severed and so converted into personalty was never held, or supposed to take them out of the category of fixtures. The question is, what were they *intended for ?* what is their *primary* use ? All fixtures are in some respects anomalous in their characteristics; railroad rolling stock is no more so than others. Looked at in some aspects, all may be considered annexed to the realty; considered in others, all are undoubtedly personal property. It is, therefore, insisted that the distinctions taken in the cases in 31st *Barbour* are not real, and leave the authority of the prior decision in the second district unshaken.

It nowhere appears that the rolling stock in question had been actually off the Plattsburgh and Montreal railroad; and it does affirmatively appear, that when levied on and sold to Vilas, it was standing on the track of the Plattsburgh and Montreal railroad, annexed thereto. The referee finds that the mortgages cover the cars, engines and other articles enumerated under the name of equipment. To this there is no exception. He decides that as to equipment they are chattel mortgages, and that they were not filed as such; but were recorded as a mortgage of real estate. It becomes, therefore, important to inquire what is a mortgage of a railroad and the franchises of a railroad company. It can hardly be said that franchises are real estate. A railroad is built on land, and embraces specific rights and powers, and requires the use of specific articles. When the entire undertaking is mortgaged as an entire thing, including the roadway, franchises and equipment, it treats the whole as a unit, and conveys to the mortgagee a thing capable of being enjoyed. Chattels connected with the enjoyment of the realty, and convenient for its useful enjoyment, are held by the courts to be so related to the realty that they will pass by a general conveyance; thus, hop-poles, manure, fence rails, etc. all pass under a deed of real estate, although not mentioned *in numero.* It is because good husbandry requires the use of these chattels, that although personal

of themselves, they shall not be severed from the land by a grantor after sale. The equipment of a railroad is as much a part of it, in common parlance, as the rails, ties, switches, or bridges. It is as necessary to its use as a railroad, as hop-poles, rails, manure, &c. to a farm. When we speak of a railroad we speak of the whole thing. When a railroad and franchises are conveyed, the whole undertaking is conveyed, and we insist that a mortgage of a railroad and franchises *ex vi termini*, carries the equipment, it carries all that is connected with the railroad necessary to enjoy the franchise. Public convenience requires that this should be so. It can never have been intended that when railroads are built, they can be destroyed by operation of law, one creditor seizing one part, and another another part. And such a conveyance being recorded as a mortgage, gives it sufficient publicity and answers all the original purpose of the statute, and will promote public convenience. We therefore insist that when the owner treats a railroad, its franchises, equiments and appurtenances as an entire thing, and mortgages them all as one thing to innocent purchasers, who part with their money on the faith of its being conveyed as an entirety, the title of the mortgagee is to the whole thing conveyed, and he is not liable to have his title divested by parties posterior in interest, by mere operation of law.

II. The mortgages were not void as to the rolling stock for want of filing or of change of possession, even though the rolling stock in question is to be considered personal property. For the reason that the statutes which declare chattel mortgages, unaccompanied by possession, void as against creditors, have clearly no application to the rolling stock of railroads. 1. The courts have always felt bound to hold, in construing statutes, that cases not within the intention of the legislature were to be excepted from the operation of the statute, although entirely within the letter. " A thing which is within the

letter of the statute is yet not within the statute, unless it be within the intention of the makers." (*The People* v. *Utica Ins. Co.*, 15 *John.* 381.) And the courts have always assumed to judge of the intention of the legislature, from all the circumstances of the case. Such constructions by the courts have been numerous from Coke's time down. 2. The inapplicability to rolling stock of all the statutes and judicial constructions holding chattel mortgages void for want of change of possession, is obvious from a consideration of the duty of railroad companies to afford transportation to the public, the performance of which duty is the object of their creation, and which duty cannot be performed without the possession of the rolling stock, and as to which the strict terms of the statute are incapable of fulfillment. (*See Pierce* v. *Emery*, 32 *New Hamp. Rep.* 504; *Rex* v. *Severn and Wye R. R. Co.*, 2 *B. & Ald.* 646; *Rex* v. *Eastern Counties R. R.*, 10 *Ad. & Ellis*, 531; *Rex* v. *S. Wales R. R. Co.*, 14 *id. N. S.* 902; *Clark* v. *Washington*, 12 *Wheat.* 46, 54. *Winchester and L. Turnpike Co.* v. *Vimont*, 5 *B. Monroe*, 1; *Arthur* v. *Comm. and R. R. Bank*, 9 *S. & M.* 394; 13 *S. & R.* 210; 9 *Watts & S.* 27; 5 *id.* 265.)

III. However the foregoing questions may be decided, it by no means follows that the plaintiffs' mortgages have lost their lien on the rolling stock in question. The defendant Vilas has always been a director of the Plattsburgh and Montreal Railroad Company, whose property the rolling stock was. A director of a corporation is a *trustee* for it. His duty as such trustee is to seek its advantage in every just way. If its property is levied on by execution creditors, it is his duty to do all that he can to have the property sold to the best advantage. He cannot, of course, become himself a purchaser at such sale, for that would bring his private interest as purchaser into conflict with his duty as trustee. While, therefore, it seems to be conceded that a director of a corporation may, for his own just debt, recover a judgment against the corporation, and

have its property applied by sale to the satisfaction of the judgment, such an operation being in judgment of law and morals a mere exchange of equivalents, it by no means follows that at such execution sale *he may himself become the purchaser* of the corporate property sold. On the contrary, such a purchase is against his duty to the stockholders, and voidable as against them. In the present case, for about ten thousand dollars, Mr. Vilas bought property, a *portion* of which, after several years hard service, was valued by his assent at $18,000; and among other items he bought a locomotive and cars for a little over $3000, which he sold two years and a half afterwards for $7500. Even a mortgagee, who owes no other duty to the mortgagor, than what arises out of the mortgage relation, cannot at a sale under the mortgage, judicial, no more than extra judicial, purchase at the sale, without leave from the court or the statute; and *a fortiori* a director of a corporation who, with his associates, has the exclusive charge of the corporate property and business, cannot speculate upon that property to their disadvantage. (1 *Kern.* 266. *Cumberland Coal Co.* v. *Sherman*, 30 *Barb.* 571.)

IV. The purchase of the rolling stock by Vilas was voidable by the plaintiffs as prior mortgagees of the property, as much as by the railroad company themselves. The plaintiffs are assignees of the company—as much entitled to redeem from Vilas as they would have been from a tax sale subsequent to their mortgage. (*See Iddings* v. *Bruen*, 4 *Sandf. Ch.* 277.)

V. Neither could the plaintiffs' right to redeem be affected by the act of the railroad company in hiring the rolling stock from Vilas, nor by any other act of theirs. The railroad company themselves would not be precluded, by hiring the stock from Vilas, from redeeming. For the only obligation of a tenant is to restore the possession to his landlord. Having done that, and relinquished the advantage his lease gave him, he may

then dispute his landlord's title. Their right to *redeem*, however, is not at all inconsistent with no impeachment of his title *before* redemption. *Until* redemption, they might hire from him without prejudice to their own right *after* redemption. Moreover, a trustee's purchase of the property of his *cestui que trust cannot be confirmed* by the latter, except he is free from all distress or necessity. (*Lewin on Trusts,* 8 *Law Library, N. S..*391, *cited* 30 *Barb.* 575.) But the railroad company were under the absolute necessity to get the use of their rolling stock, and having no money to buy, must hire. The same considerations apply to the receiver in this cause, as respects his act in hiring the property from Mr. Vilas. He was, however, no grantor of the plaintiff, nor his agent, and his acts, whatever they may have been, cannot prejudice the plaintiff.

VI. It is true that a trustee, whose purchase of the property of his *cestui que trust* is invalidated upon the principle referred to in the second point, is allowed the amount paid by him for the property, deducting all sums received by him by means thereof. In the present case Mr. Vilas paid for the rolling stock and other property. But he has received, for locomotive and tender, passenger cars, hire of rolling stock, &c. $16,317.74. He has, therefore, a surplus of money on hand, (as the referee finds,) and the residue of the rolling stock, not sold by him, but now in his possession, stands already redeemed.

VII. The defendant Vilas is not a *bona fide* creditor or purchaser, within the contemplation of the statute. 1. He was a director of the railroad company at the time of the execution of the mortgages, and remained a director until after the personal property was purchased by him. As such director he stood in a fiduciary relation to the mortgagees, and he was bound to protect their interests in the property mortgaged. 2. The property was left in Vilas' possession (with others) to manage and protect. He cannot be permitted to purchase the property and so enrich

himself at the expense of the trust, or to defeat the purpose of the mortgage. 3. The assent of the mortgagor or receiver, or their hiring the property, cannot affect the rights of the holders of the bonds. Even, then, if the mortgages, *quoad* the equipment, are chattel mortgages, Vilas does not stand in a position to object to the want of filing.

VIII. If the mortgages be regarded as chattel mortgages not filed, yet they are good against Vilas, because he had notice of them. They can only be void as against creditors and purchasers in good faith. It is clearly settled that a subsequent purchaser or mortgagee, having notice of an unpaid chattel mortgage, cannot set up the want of filing. (*Gregory* v. *Thomas*, 20 *Wend.* 17. *Sanger* v. *Eastwood*, 19 *id.* 514. *Hill* v. *Beebe*, 13 *N. Y. Rep.* 566. *Lewis* v. *Palmer*, 28 *id.* 271.) The object in filing is the same as the recording of deeds of lands. It is universally held that notice of an unrecorded deed is equivalent to registration. Registration is but constructive notice, and actual notice prevents the mischief sought to be remedied by the recording acts. (*Gregory* v. *Thomas, and Sanger* v. *Eastwood, supra. Meech* v. *Patchin*, 14 *N. Y. Rep.* 71.) This conclusion cannot be avoided except by holding that the *bona fides*, mentioned in the statute, is wholly immaterial so far as creditors are concerned. And then we have a statute enacted to prevent frauds, which, by construction, will enable an agent, having a power of attorney to make a chattel mortgage for his principal, to seize the property mortgaged immediately after the execution of the mortgage, and before the mortgagee has time to get it on file; and appropriate the property to his own use. This can only be avoided by holding the *bona fides* equally applicable to creditors, mortgagees and purchasers.

INGRAHAM, J. Two questions are submitted to us on this appeal. One is whether the rolling stock of a rail-

road is to be considered as fixtures passing under a mortgage on the road and franchises; the other, whether if it is personal property merely, and not to be regarded as fixtures, a general mortgage of the company on the whole road, its equipments and franchises, must necessarily be filed as a chattel mortgage to give it validity against a judgment creditor. The first question is one for which authority may be found on both sides, and even in this state we find contradictory decisions on this question.

In *The Farmers' Loan and Trust Co.* v. *Hendrickson,* (25 *Barb.* 484,) it was held that the rolling stock are to be deemed fixtures, and will pass under a mortgage on the road, as such. This was decided by the general term in the second district.

In *Stevens* v. *Buffalo and New York City R. R. Co.* (31 *Barb.* 590,) the same question was before the general term of the eighth district, in which they held that the rolling stock of a railroad, as between mortgagee and judgment creditors or purchasers, was personal estate, did not pass under a mortgage as fixtures, and could not be held under the mortgage as personal estate, unless the same was filed as a chattel mortgage, pursuant to the statute. This case was followed at a special term in the fifth district, before Allen, justice, who concurred with the judges in the eighth district.

These contradictory decisions of general terms in this court leave the question still unsettled, so far as any adjudications here can be relied on.

In the *Minnesota Co.* v. *St. Paul Co.* (2 *Wallace's U. S. Rep.* 609,) the question was discussed, and was referred to by Justice Nelson in a dissenting opinion upon another point. He says: " We agree that the rolling stock upon this road, was covered by the several mortgages, and as respects any other valid liens upon the same, is inseparably connected with the road; in other words is, in technical language, a fixture to the road, so far as in its nature and use it can be

called a fixture; and is a fixture extending over the entire track of the road."

In an able note annexed to that case, the subject is fully discussed, and the conclusion arrived at, that rolling stock was a fixture, and passed under a conveyance of the road. (*P.* 646.)

Similar decisions have been made in *Pierce* v. *Emery*, (32 *New Hamp. Rep.* 484,) and other cases there cited. I refer to the various citations in the cases above noted, and to *Redfield on Railways, p.* 576, for other cases.

It is difficult at the present day to define with with any precision what is necessary to make personal property, fixtures. The old rule which required annexation to the freehold, has been so often departed from as to furnish no rule at the present day. For the purposes of trade and as between landlord and tenant, that rule has been so modified as to authorize the removal of many articles which otherwise, by being so affixed, would have been included under the definition of fixtures.

Nor is the rule that any thing is a fixture which cannot be removed without injury to the freehold sufficiently extensive to give any correct definition of the articles coming within it.

The various cases of doves, rabbits, fish, blinds, keys, fences, hop-poles, deer, millstones, removed from their place by the owner, and others, are all exceptions to such a rule.

The more sensible rule seems to be one which of late years has been suggested by judges, viz: If the articles are essential to the use of the realty, have been applied exclusively to use in connection with it, are necessary for that purpose and without such, or similar articles, the realty would cease to be of value, then they may properly be considered as fixtures, and should pass with it.

I know that even this rule has been departed from in matters relating to trade, such for instance as the case of looms in a factory. (*Murdock* v. *Gifford*, 18 *N. Y. Rep.* 28.)

Hoyle *v.* Plattsburgh and Montreal Railroad Company.

But that case was decided upon the provisions of the statute, (2 *R. S.* 83, §§ 6, 7,) which provided that things annexed to the freehold for the purpose of trade or manufacture, and not fixed into the wall of the house, &c. should be deemed assets.

I am not prepared to say that I accede to the opinion delivered at the special term in this case that the rolling stock in all cases is to be considered as personal property, and does not pass under a mortgage of the road and its appurtenaces. But it seems to me that there is another principle to be applied to this case which will render it not very material whether in a case where the conveyance is only of the realty, the rolling stock could be included.

It is found by the referee, and conceded, that the mortgage is sufficient to include in the mortgaged property the rolling stock; and it must also be conceded that such was the intent of the parties. Nor do I think there can be any doubt that the parties intended that the rolling stock and equipments of the road should pass as a part of the road and as necessary to its use. The object of the mortgage was to provide funds for the building of the road and preparing it for travel, and the intent of the parties was to secure the bondholders with the mortgage on the whole property in the road as used by them for travel. For this purpose the rolling stock was as necessary as the rails. Either could be supplied with more money, and without either the road could not be made available; and the fair inference is that the parties in giving this mortgage intended to include all, under its provisions. Where such was the intent of the parties, the court should give effect to it. If they had expressly declared that the rolling stock should be considered as fixtures attached to the road and to pass with the grant of the road, such an agreement would be valid, and the court would treat it accordingly. Such an intent may, I think, be fairly inferred from the terms of this mortgage.

Hoyle *v.* Plattsburgh and Montreal Railroad Company.

In *Murdock* v. *Gifford*, (18 *N. Y. Rep.* 28,) Johnson, Ch. J. says: "Between the parties, and between grantor and grantee, the effort of a court is always to ascertain the intent of the parties and to give it effect. If their language affords evidence that a chattel is intended to pass, it will pass, of course, whether it be a mere chattel or one which by annexation has become part of the realty.

In this case there seems sufficient to warrant the conclusion that the parties intended to include the equipments of the road as part of the realty, and that such a construction should be given to it by the courts. (*See also, Coe, trustee,* v. *Pennock et al.* 6 *Law Reg.* 27.)

The second question is as to the necessity of filing the mortgage as a chattel mortgage, if it should be held that the rolling stock did not pass with the road.

The authority granted by the 28th section of the general railroad act, (*Laws of* 1850, *p.* 211,) authorizes railroad corporations to borrow money for the building of their roads or operating them, and to mortgage all their corporate property and franchise to secure the payment thereof. I think this section contemplates a mortgage of all the property, whether land, road, rolling stock or franchise, and warrants the conclusion that it was the intent of the legislature that the whole should be included in one mortgage and treated as a mortgage of the road and its accessories. Such a mortgage need not be treated as a chattel mortgage, and filed, to give it validity.

Geo. G. Barnard, P. J. concurred.

Sutherland, J. I concur in the conclusion that it was not necessary to file the mortgage as a chattel mortgage, but I remain of the opinion that the rolling stock of a railroad cannot be regarded as a fixture.

Judgment affirmed.

[New York General Term, January 6, 1868. *Geo. G. Barnard, Ingraham* and *Sutherland,* Justices.]