## WILLIAM J. TOWNE *vs.* JOHN M. FISKE.

Suffolk. March 10. — June 28, 1879. MORTON & ENDICOTT, JJ., absent.

A portable hot-air furnace, resting by its own weight upon the ground, put into a house by a person rightfully in possession under an agreement for a deed, does not become part of the realty, although connected with the house by a cold-air box and hot-air pipes and registers, in the usual manner.

Gas-fixtures in a house, though attached by screws to pipes, are not part of the realty.

A refusal to give an instruction requested is not a ground of exception, if the request is based on a portion of the evidence only.

The mere fact that a person, pending a suit against him, is in possession of personal property which he has sold and constructively delivered, is not *prima facie* evidence that the sale is fraudulent as against a creditor.

A person in possession of a house and land, under an agreement with the owner for a deed, put a hot-air furnace into the house, and then sold and constructively delivered the furnace to a third person. Afterwards, but while the furnace remained in the house, it was attached by an officer on a writ in an action by the owner of the house against the person with whom he had made the agreement for a deed. The purchaser removed the furnace; and, while it was in his possession, the officer seized it on an execution issued in the above-mentioned action, and sold it. *Held,* that, even if the furnace was part of the realty when put into the house, the purchaser could maintain an action against the officer for the conversion of it by him after it was removed from the house.

TORT for the conversion of a hot-air furnace and pipes, and of certain gas-fixtures, attached by the defendant, a deputy of the sheriff of Middlesex, on a writ in which William Claflin was plaintiff and Robert S. Webster and Sophia G. Webster, his wife, were defendants, and afterwards sold on execution.

At the trial in the Superior Court before *Putnam,* J., it appeared that, in August 1874, Robert S. Webster made a verbal

contract with Claflin, by the terms of which the latter was to convey to Mrs. Webster a parcel of land in Newton on the performance by her of certain conditions ; and under which Webster and his wife entered upon the land in September 1874, and occupied the house thereon, until May 2 or 3, 1877, when they moved away, never having performed the conditions, and the deed was not delivered ; and that, while they were in possession, they put the furnace and gas-fixtures into the house.

The plaintiff put in evidence a bill of parcels of the furnace and gas-fixtures from Mrs. Webster to him, dated March 30, 1877. The only evidence as to Mrs. Webster's title to the gas-fixtures was the testimony of George P. Clarke, who testified that he sold them to Mr. Webster and Mrs. Webster paid for them ; that he charged them to Mr. Webster on his book of accounts, and subsequently, at Mr. Webster's request, made a bill of them to Mrs. Webster.

The plaintiff testified that, on March 30, 1877, he agreed in Boston with Mr. Webster to buy the furnace and gas-fixtures ; that, a week or ten days afterwards, he went to the house where they were, examined the articles, and took possession of them ; that Mrs. Webster pointed them out, and he saw them all ; " that he took possession of everything there was delivered to him as much as could be in the house ; " that the bill of parcels was made out a day or two afterwards, and dated back to the time of the bargain ; that the price was not positively agreed upon until he had seen the articles.

The evidence in regard to the manner in which the furnace and the gas-fixtures were attached to the house was as follows : The furnace was a portable hot-air furnace, made of iron in the form of a cylinder, and set upon the earth on the bottom of the cellar under the house ; and, after being so set, the cellar bottom was concreted up to and around the furnace, the concrete forming the floor of the cellar ; the cold-air box of the furnace was put through the wall of the cellar, and plastered into the wall ; it opened into the cold-air chamber in the base of the furnace by removing a panel made for that purpose, without being otherwise attached or fastened to the furnace ; the furnace was connected with registers in the first and second stories of the house by hot-air pipes, for the purpose of warming the house. The

registers were set in soapstone collars in holes in the floor made for them, and to which they fitted. The hot-air pipes were of tin, and those connecting with the second story of the house went from the first to the second floor inside of and between the partitions or ceiling, which were of lath and plaster. The furnace was of cast-iron and covered with galvanized sheet-iron. In the top of the covering were holes in which collars were set for each of the hot-air pipes, into which they fitted. The hot-air pipes were not fastened to the furnace or register boxes, excepting that they fitted over collars like the ordinary joints of a funnel. The smoke pipe was of galvanized iron, ten or twelve feet long, slipping into a collar in the furnace and at the other end slipping into the chimney in the cellar, without being otherwise fastened thereto. The furnace weighed from seven to eight hundred pounds, and rested on the earth under the cellar, of its own weight, and was not otherwise fastened to it. The evidence was conflicting on the point whether the concrete floor of the cellar was so attached to the furnace that the furnace could be lifted out of the hole through the concrete on which it stood without breaking or disturbing the concrete; but there was evidence that, when it was removed, the concrete was not disturbed.

The gas-fixtures were screwed to gas-pipes fixed in the house, to which they fitted, and they were further fastened, so as to prevent the escape of gas through the joints, with a preparation of boiled oil and red-lead put upon the screws before they were screwed to the pipes, in the usual manner of putting on gas-fixtures.

The defendant gave in evidence a special order of attachment, issued by the Superior Court for the county of Middlesex, in an action pending in that court, May 3, 1877, with the officer's return thereon, which was served by attaching the articles in question, on that day, by the defendant, and duly returned. On the day of the attachment the Websters were moving out of the house, and the defendant put a keeper in custody of the articles until they had vacated the house that day, and then took the keys of the house, locked it up and kept the keys. Afterwards, and while the house was so locked up, Arthur C. Conant, employed by the plaintiff, went to the house for the purpose of

removing the furnace to the plaintiff's place, and, finding the house locked, borrowed a key of a neighbor, and by means of the key opened the house and removed the furnace to the plaintiff's shed. The defendant, upon finding the furnace had been removed, retook it, and returned it to the house. Judgment was rendered in the action in which the precept was issued in favor of Claflin against the Websters for $1081 debt and $21.19 costs, upon which execution was issued, and the furnace and gas-fixtures were seized and sold upon it by the defendant to Claflin in part satisfaction of the execution. Aside from the removal and return of the furnace as above stated, neither it nor the gas-fixtures were ever removed from the places where they were set or fastened in the house, and they remained, after the alleged sale from Mrs. Webster to the plaintiff, as they then were attached to the house. On May 5, the plaintiff demanded the furnace and pipes and gas-fixtures of the defendant, after the return of the furnace to Claflin's house as above stated.

The defendant requested the judge to instruct the jury as follows: "1. The plaintiff is not entitled to maintain this action upon the evidence. 2. The plaintiff is not entitled to recover in this action for the alleged conversion of the furnace. 3. The plaintiff is not entitled to recover in this action for the alleged conversion of the cold-air box, or hot-air pipes, or smoke pipe, or registers, or soapstone frames. 4. The plaintiff is not entitled to recover in this action for the alleged conversion of the chandeliers and gas-fixtures. 5. Upon the evidence in this case, the furnace, cold-air box, hot-air pipes, registers and soapstone frames in which the registers are set were, at the time of the alleged sale by Mrs. Webster to the plaintiff, a part of the realty, and no title in them passed to the plaintiff by the alleged sale. 6. The evidence in this case does not show any conversion of the hot-air pipes, cold-air box, register, or soapstone frames, previous to the date of the plaintiff's writ, by the defendant, that would enable the plaintiff to maintain this action therefor. 7. The evidence in this case does not show any conversion of the gas-fixtures, brackets or chandeliers, that would enable the plaintiff to maintain this action therefor. 8. The evidence in this case does not show a sufficient delivery of the property to vest the title in the plaintiff as against the attachment thereof by the defendant.

9. If the furnace was placed in the house occupied by the Websters, by them or either of them, while occupying the same under an agreement to purchase the house and lot of land on which it stood, and was set upon the earth upon the bottom of the cellar of said house, and the floor of the cellar concreted or cemented up to and around it, so that the cement or concrete floor fitted to it in such manner that it would leave a hole in the floor of the cellar to remove it corresponding to the form and size of the base of the furnace, and if the cold-air box to convey the cold air to said furnace was fitted into and through the wall or foundation of the house and plastered in so that to remove said cold-air box would leave a hole in the wall of the cellar or foundation of the house corresponding with the size and shape of the cold-air box, and if the hot-air pipes to said furnace connected the same with registers fitted into soapstone frames, fitted into the floors or ceilings of said house, so that to remove the same would leave holes in such floors or ceilings or both, to correspond in shape and size to such soapstone frames; and said furnace, cold-air box and hot-air pipes, registers and soapstone frames were so set and fitted to the house and connected together for the purpose of warming or heating the house, said furnace, cold-air box, hot-air pipes, and registers became a part of the realty, and no title to the same passed to the plaintiffs by the alleged sale of the same to him by Mrs. Webster. 10. If the gas-fixtures were placed in the house occupied by the Websters, or either of them, while occupying the same under an agreement to purchase the house and lot of land upon which it stood, and fastened and fitted to the gas-pipes in the house and belonging to it for the purpose of lighting the house, they became a part of the realty, and no title to them passed to the plaintiff by the alleged sale of them to him by Mrs. Webster. 11. If the only act or ceremony connected with the alleged delivery of the gas-fixtures and other property mentioned in the plaintiff's declaration previous to the attachment of them by the defendant was that the plaintiff went to the house where they were and looked at them for the purpose of ascertaining their value and fixing a price on them, and agreed to the value, and requested Mrs. Webster to make a bill of the same, which she at a subsequent day made and handed to him, there was no sufficient delivery of the property to the plaintiff

to pass the title to him as against the attachment by the defendant. 12. If the alleged sale of the property claimed by the plaintiff by Mrs. Webster to him was absolute in its terms and made when she was deeply in debt, or in debt beyond her means to pay, and when an action was pending against her, and if she was allowed to retain and continue in the use and possession of the property the same as though the sale had never taken place, without any explanation or reason being given therefor, it is *prima facie* evidence of fraud that would, unexplained by evidence, avoid the sale as against an attaching creditor. 13. The plaintiff cannot maintain this action unless he shows, in addition to a sale of the articles in question from Mrs. Webster to him, a delivery of them previous to the attachment. 14. A delivery of the bill of sale is insufficient unless there is a delivery of the property. 15. The test whether the furnace was a part of the realty is not whether it can or cannot be removed."

The judge granted the requests for instructions numbered 3, 6, 13, 14, and 15, declined to grant the other requests, and upon these points instructed the jury that there was evidence to go to the jury upon the question whether there was a delivery or not, fully instructing them as to what constituted a delivery of personal property, and as to what was necessary to make a delivery as against subsequent attaching creditors, to which rulings no specific objection was taken, except that the instructions asked for on this point were not given. The judge also fully instructed the jury as to when personal property affixed to the realty became fixtures, and the law applicable to them generally, and as between mortgagor and mortgagee, which relation the defendant contended, and the judge instructed the jury, existed between Webster and Claflin. The jury were further instructed that, as matter of law, the gas-fixtures, chandeliers, and brackets were not fixtures, but personal property; and as to the furnace, the judge left it to the jury to say whether or not it was a fixture, with proper instructions upon this point. Upon the question of Mrs. Webster's title to the gas-fixtures, the judge left it for the jury to say, whether or not, upon the whole evidence, Webster did not purchase them, as the agent of his wife and on her account, and whether or not she was the real owner at the time of the sale to the plaintiff.

To these rulings no specific exceptions were taken, the only ground of exception being that the instructions asked for were not given. The jury returned a verdict for the plaintiff for the conversion of both the furnace and the gas-fixtures; and the defendant alleged exceptions.

*W. F. Slocum & W. S. Slocum*, for the defendant.

*A. E. Pillsbury*, for the plaintiff.

SOULE, J. The first, second, seventh, and eighth requests by the defendant were properly refused. There was evidence on each of the matters involved, proper for the consideration of the jury in determining a question of fact. It would have been error in the court to rule, as matter of law, in accordance with either of these requests. The same is true as to the fourth request. The fifth request, so far as it relates to the cold-air box, the hot-air pipes, the registers and the soapstone frames, became immaterial, because the court ruled, in accordance with the third and sixth requests of the defendant, that no recovery could be had for either of those articles. The furnace was a portable furnace, there is no evidence that it had any peculiar adaptation to the house in which it was placed, or was essential to the enjoyment of the estate, or that it was intended otherwise than as furniture, in the same sense in which a stove is furniture. The court therefore properly refused to rule that it was a part of the realty. *McConnell* v. *Blood*, 123 Mass. 47. The ninth request was properly refused. It assumes as proved certain things of which there is no evidence. And, even if all that it assumes were true, it would not necessarily follow that the furnace was a part of the realty. That part of the request relating to the other articles named in it became immaterial under the rulings made, and nothing was included in the verdict for those articles.

Gas-fixtures, whether in the form of chandeliers suspended from the ceiling at the top of the room, or projecting as brackets from the perpendicular walls, though attached to the gas-pipes by screws, and made tight by cement, are in the nature of furniture, and do not lose their character as chattels by reason of the manner in which they are affixed. *Guthrie* v. *Jones*, 108 Mass. 191. The tenth request was therefore properly refused.

The eleventh was not called for by, and was not appropriate to, the evidence in the case. It nowhere appears from the testi-

mony of any witness, that the only things done by way of deliv-
ery of the chattels to the plaintiff were those recited in the
request.    It was properly refused.

There is nothing in the bill of exceptions to show that the
twelfth request was adapted to the evidence in the case.    The
mere fact that a suit was pending against Mrs. Webster would
not make the retention by her of the goods sold *prima facie*
evidence of fraud.    And the bill does not show that the other
elements of the situation stated in the request existed.

There is another view of the case, so far as regards the claim
of the defendant that the furnace was a part of the realty.    If
it was so, the defendant did not acquire any special property in it
when he made the attachment, because it was real estate of the
plaintiff in the writ which he was serving.    When the plain-
tiff removed it, he did no wrong to the defendant, however he
may have trespassed on Claflin's rights.    When he carried it
away, severed from the land, it was personal estate in his hands,
to which he had a better right, having the possession, than a
stranger had.    The writ gave the defendant no right to take it,
for the wrongful act of the plaintiff in severing it from the land
did not make it the personal property of the Websters, the de-
fendants in that writ.    The defendant, however, took the furnace
from the plaintiff, and attempts to justify under that writ.    The
justification fails, if the furnace was a part of the realty, and the
plaintiff might maintain his action for the conversion of the fur-
nace, afterward sold by the defendant on the execution against
the Websters, on the strength of his possession merely.    *Winship*
v. *Neale*, 10 Gray, 382.    *Shaw* v. *Kaler*, 106 Mass. 448.    *Harring-
ton* v. *King*, 121 Mass. 269.    In this view of the case, no harm
would have come to the defendant from an erroneous ruling by
the court as to whether the furnace was a part of the realty
or not.                                    *Exceptions overruled.*