THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. JAMES A. MORGAN.

1. STRUCTURE, *a Fixture, or not.* Whether a structure is a fixture or not depends on the nature and character of the act by which it is put in its place, and the purpose for which it is intended to be used.

2. FIXTURE, *What is — Criterion.* In determining what is a fixture, the simple criterion of physical annexation is so limited in its range and so productive of contradiction, that it will not apply with much force.

3. PERSONAL PROPERTY, *When a Fixture.* One of the tests of whether personal property retains its character or becomes a fixture, is the uses to which it is put. If it is placed on the realty to improve it and make it more valuable, it is some evidence that it is a fixture; but if it is placed there for a use that does not enhance the value of the realty, this is some evidence that it is personal property.

4. WELL — *Removal of Pump and Boiler.* Where a railroad company dug a well and put in a pump and a boiler for the purpose of filling its tank on the line of its railroad, and used the same for several years, believing the well and attachments were upon its own land, when it is discovered that they are on another's land, the company can remove the pump and boiler without paying the owner of the land therefor.

*Error from Osage District Court.*

THIS was an action brought by defendant in error in the district court of Osage county, against the plaintiff in error, to recover the sum of $500 for an alleged trespass, and to enjoin further trespasses threatened by plaintiff in error upon the same real estate, which trespass would permanently injure the said real estate. Defendant below filed a general denial. At the April term, 1887, the case was heard by the court, a

jury being waived, upon the following agreed statement of facts:

"It is hereby agreed by and between the parties hereto, that this cause shall be heard upon the following agreed statement of facts: That on and prior to September, 1880, one A. O. Morgan was the owner of the following-described real estate in Osage county, Kansas, to wit: Bounded by a line commencing at a point fifty feet south and one hundred feet east of the southeast corner of block numbered thirteen, in the town (now city) of Burlingame, in said county and state, as platted and recorded in the office of the register of deeds of said county; thence running east one hundred and twenty-five feet; thence south one hundred and fifty-five and one-half feet; thence west one hundred and twenty-five feet; thence north to the place of beginning. Also, a strip of land adjoining and immediately south of the above-described land, running fifty feet north and south; one hundred and thirty-six feet east and west. The west boundary of the last piece being a continuation of the west boundary of the first-described real estate; the west boundary of each of said pieces being the right-of-way, at the time, of defendant, and ever since belonging, used and occupied by the defendant as and for its right-of-way. The first-described piece is designated by agreement as 'A,' and the second-described piece as 'B,' for the purpose of reference. At about September, 1880, the defendant purchased from the said A. O. Morgan the said piece of land designated as 'B,' and received from him a good and sufficient conveyance therefor; that immediately thereafterwards the defendant, intending to erect a well and pump and boiler-house upon the land so purchased by it and designated as 'B,' commenced the work of digging such well and building such house and so forth, on what it in good faith believed to be the land so purchased by it and designated as 'B,' but that as a matter of fact it built its boiler-house upon the ground designated as 'A,' and in digging its well dug it of the following dimensions: twenty feet in diameter and eighty feet deep, but walled up about twenty-four feet; that the well when so dug was, as a matter of fact, located and situated so that two feet of it only were upon the land belonging to the defendant, and designated as 'B,' and the balance of it upon the land designated as 'A'; that after the building of said house on land 'A' the boiler was put in there for the purpose of operating a pump in said

well, and a pump was also placed in said well, to be operated by steam furnished by said boiler. The pump and boiler were all actually located upon land 'A.' The defendant dug this well for the purpose of obtaining water to be used in a tank situated on its right-of-way, to supply its engines running on its right-of-way. Afterwards, and about 1882, the said A. O. Morgan disposed of and conveyed land 'A' to third parties, who subsequently and soon afterwards conveyed the same to the present plaintiff, who since that time has been, and is now, the owner thereof, and has been continuously in possession of the land since he owned it, save and except the boiler and pump, which was used by defendant and in its possession except as hereinafter stated. About June, 1886, the plaintiff having ascertained that said well was located mostly upon his premises, and that said boiler-house and boiler were also upon his premises, inclosed the same with a fence, and forbade the defendant from entering upon his premises for the purpose of using either said pump or boiler; that this was the first time defendant was ever notified by any owner of said property not to use the same, and the first time it knew it was on plaintiff's property, except as shown by the statement hereinafter made; that from that time until about September the plaintiff kept the defendant from using the same; and that about September, 1886, the defendant commenced proceedings for the purpose of having the land on which said boiler, pump and well were situated condemned, and had commissioners appointed, who made a view and report, assessing plaintiff's damages under such condemnation proceedings at six hundred dollars; that the defendant, deeming said assessment too high, refused to accept the same and abandoned said proceedings, and has never done anything further to acquire any right under said proceedings, and claims none by virtue thereof; that thereafterwards, against the will and consent of plaintiff, and in the night-time, the defendant forcibly took and removed said boiler from said premises on which they were located, as above described, and that in doing so they so damaged the boiler-house that it has since blown down and broke through the fence built by the plaintiff; that the plaintiff having commenced this action and obtained a temporary order of injunction, the pump has not been removed, owing to said injunction, and remains where it was originally placed; that the value of the boiler at the time it was taken by defendant was the sum of one hundred dollars; that the value of the pump as it remains in the well is

the sum of one hundred dollars; that the boiler is connected with the pump by a steam pipe for the purpose of furnishing steam from the boiler to operate the pump with, and for conveying and carrying water to the tank; that the boiler was placed upon the ground upon a cast-iron base, which held the ash-pan, and that it was not set in masonry; that the damages occasioned by the trespass outside of the taking and carrying away of the boiler and injury to the building is, and was, the sum of twenty-five dollars, and the injury to the building was the sum of twenty-five dollars; that at the time the well was being dug the then owner of the property, A. O. Morgan, stated to the workmen that he believed they were too far north to be on their own land; that at and prior to the time of the commencement of the suit the defendant was intending to remove the pump off from the land designated as 'A,' and intended to fill up the well, and threatened to do these things, each of which the plaintiff forbade the defendant from doing at the time; that at the time of the commencement of this suit the defendant had no interest in land 'A,' except as herein stated; and that plaintiff had no interest in land 'B,' except as herein stated; that the well on land 'A' was for the purpose of obtaining water, and the pump was connected with pipes with the water in the well, and was adapted to drawing water from the well and used for that purpose, and that purpose only; and the motive power to work the pump was the boiler connected with the pump by pipes, and without the boiler the pump could not be worked, as the pump had a steam cylinder and could not be worked by hand power, and the defendant severed the boiler from the pipes connecting the boiler with the pump, and removed the said boiler from the freehold."

Upon the agreed statement of facts the court found as conclusions of law:

"1. Defendant had no right to remove the boiler at the time when it did remove the same.

"2. The defendant has no right to remove the pump.

"3. The plaintiff is entitled to recover the value of the boiler.

"4. As between the parties hereto, the pump is the property of the plaintiff.

"5. The defendant was a trespasser in its use of the boiler and pump.

"6. The plaintiff is entitled to recover for the injury to the boiler-house.

"7. The plaintiff is entitled to recover from the defendant the sum of $150, as follows: For value of boiler, $100; for damages by removal of boiler, $25; for damages to boiler-house, $25; total, $150."

A judgment was rendered in conformity to the conclusions of law; complaining of the judgment, the defendant brings the case here, and asks for a review, and judgment in its favor on the agreed statement of facts.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error.

*William Thomson,* for defendant in error.

Opinion by HOLT, C.: The plaintiff in error, defendant below, complains of two errors in the trial of the action: one, allowing damages for the boiler and its removal; the other, in decreeing a perpetual injunction against the removal of the pump. Both of the alleged errors involve the application of the same principles and require the determination of the same question, namely, whether the several pieces of property retained their character as chattels, or became fixtures. What we may say of one thing in this connection will usually apply to all the others. It will be conceded that before plaintiff could recover for the conversion of the boiler, it must have become a part of his real estate. The boiler originally was the property of defendant, and it could have done with it as it pleased; and the only way it could have become divested of its ownership, under the facts in this case, was in the manner of placing it on plaintiff's land. If it then became a fixture, it was the property of plaintiff.

Hill gives this definition of fixtures: "By the term fixtures are designated those articles which were chattels, but which, by being physically annexed or fixed to the real estate, become a part of and accessory to the freehold." It is frequently a difficult and vexatious question to ascertain the dividing-line between real and personal property, and to

decide upon which side of the line certain property belongs. When we compare a thing at the extremity of one class with a thing at the extremity of the other, the difference is obvious; but when we approach the question of fixtures, which is the dividing-line between real and personal property, there is often great difficulty. The decisions of the courts are apparently as diverse as the peculiarities of the facts in the different cases that are decided; and being largely governed by the particular facts of each case, the citation and examination of decisions often tend to confuse rather than to enlighten the judgment.

In the statement of facts it is agreed that the boiler was placed on the ground upon a cast-iron base, was not set in masonry, and was connected with the pump by a steam pipe for the purpose of furnishing steam from the boiler to operate the pump, and thereby carry water to the tank. This of itself does not necessarily show such a physical attachment to the realty as constitutes a fixture. (*Hendy v. Dinkerhoff*, 57 Cal. 3; *Towne v. Fiske*, 127 Mass. 125; *Kimball v. Grand Lodge, etc.*, 131 id. 139; *Balliett v. Humphreys*, 78 Ind. 388; *Hoyle v. P. & M. Rld. Co.*, 51 Barb. 45.)

But attachment to the realty is not alone sufficient to change the character of personal property; it is only one of several tests to determine whether property originally a chattel has become a fixture by being used for a particular purpose, and however the rule may have been formerly it is not now deemed to be the controlling test. Tyler, on page 101 of his treatise on Fixtures, says:

"The simple criterion of physical annexation is so limited 2. Fixture, what in its range, and so productive of contradiction, is—criterion. that it will not apply with much force except in respect to fixtures in dwellings."

In *Meigs's Appeal*, 62 Pa. St. 28, it is said:

"In determining what is a fixture, the notion of physical attachment is exploded; it is now determined by the character 1. Structure, a of the act by which the structure is put into its fixture, or not. place, the policy of the law connected with its purpose, and the intention of those concerned."

This Pennsylvania case lays down the rule more broadly, perhaps, than that of some other courts, yet it shows the tendency of modern decisions. (See also Ewell on Fixtures, pp. 20, 293.) There is scarcely any kind of machinery, however complex in its character, or no matter how firmly held in its place, which may not with care be taken from its fastenings and moved without any serious injury to the structure where it may have been operated and to which it may have been attached. That the simple fact of annexation to the realty is not the sole and controlling test of whether a certain article is a fixture or not, is very well illustrated by the fact that trees growing in a nursery and kept there for sale are personal property, while trees no larger, if transplanted to an orchard, become real estate. On the other hand, there are very many things although not attached to the realty which become real property by their use — keys to a house, blinds and shutters to the windows, fences and fence rails, etc.

It can readily be seen that one of the tests of whether a chattel retains its character or becomes a fixture is the uses to which it is put. If it be placed on the land for the purpose of improving it and to make it more valuable, that is evidence that it is a fixture. Applying this criterion to the boiler, we are led to inquire whether this benefited the land of plaintiff. The real estate upon which this boiler was placed was a narrow strip in the city of Burlingame, and it cannot be contended that this well, boiler and the attachments could have greatly benefited this small tract of land. They were not placed there for the purpose of enhancing its value; ordinarily it would not enhance the value of such property in a city, as this small piece of ground, by digging a well thereon like the one in question; and the only value added thereto by placing a pump, boiler and boiler-house like those in controversy would be what they were worth as chattels. The test of whether real estate is benefited by the act of annexation has been repeatedly applied by the courts, to determine whether the chattel annexed became a fixture or not. (11 Alb. L. J. 151; *Woollen*

3. Personal property, when a fixture.

*Co. v. Hawley*, 44 Iowa, 57; *Taylor v. Collins*, 51 Wis. 123; *Huebschmann v. McHenry*, 29 id. 655; *Minnesota Co. v. St. Paul Co.*, note, 2 Wall. 645; *N. C. Rld. Co. v. Canton Co.*, 30 Md. 347; *Wagner v. C. & T. Rld. Co.*, 22 Ohio St. 563.)

It has been held that before personal property can become a fixture by actual physical annexation, the intention of the parties and the uses for which the personal property is to be put, must all combine to change its nature from that of the chattel to that of the fixture. (*Teaff v. Hewitt*, 1 Ohio St. 511; Ewell on Fixtures, p. 293; *Woollen Co. v. Hawley*, supra.) In this connection it is well enough to note, also, the circumstances under which this boiler was placed upon the land of plaintiff. It is conceded that the railroad company was a trespasser, yet it was not a willful one; it dug the well, put in the pump and boiler and erected the boiler-house under the belief it was occupying its own land, and only discovered its mistake after some years of occupation. There is nothing to show that it wished to gain anything by digging the well where it was located rather than on its own land; in fact, it is stated that two feet of the well is upon its own land. It can be safely presumed that the well would have been as good a one if it had been placed on defendant's side of the division line instead of plaintiff's. It dug the well, put in the pump and boiler for the sole purpose of operating its railroad, and not to improve the land where the property was placed.

The company began condemnation proceedings to obtain the land, but did not follow them to a conclusion; if it had, it would have been compelled to only pay for the land and not for its own improvements thereon. This rule is well established by authority: *Cohen v. St. L. Ft. S. & W. Rly. Co.*, 34 Kas. 158; *Justice v. N. V. Rld. Co.*, 87 Pa. St. 28; *Daniels v. C. I. & N. Rld. Co.*, 41 Iowa, 52; *Lyon v. C. B. & M. Rld. Co.*, 42 Wis. 538; *Greve v. St. P. Rld. Co.*, 26 Minn. 66; *Wagner v. C. & T. Rld. Co.*, supra; *Schroeder v. DeGraff*, 28 Minn. 299.

While it is the general rule in regard to annexation made by a stranger with his own materials on the soil of another

without his consent, that the owner of the materials loses his property because he is presumed to have parted with it and dedicated it to the owner of the land, yet the peculiar circumstances under which this well was dug would indicate there should be a modification in this instance. (*Lowenburg v. Bernd,* 47 Mo. 297.) If the company had placed it there, even under a mistake, for the purpose of ultimately improving the real estate, the law might under this state of facts have held it to be the property of the owner of the real estate; but under the agreed statement it was placed there solely for the purpose of better operating its own railroad. If it had been placed on its own right-of-way and that afterward abandoned, then under a respectable list of authorities it would have been permitted to take away the pump, boiler, and boiler-house. We can see no reason for a distinction that would have allowed any compensation to plaintiff if condemnation proceedings had been instituted, after occupation and placing improvements upon the land, and prosecuted to a conclusion, and an action brought in the way this one was. In one case the authorities are an almost unbroken current that the railroad company could not have been compelled to pay for its own property placed upon the land. We also think it should not be required to do so now. We believe, in this action, because the improvements did not and were not intended to

4. Well—removal of pump and boiler.

benefit the realty, that the pump, boiler and building should be held to be personal property and not fixtures. We are well aware that very many authorities hold that the buckets in a well are real property; unquestionably, between vendor and vendee and mortgagor and mortgagee this is the rule; but under the facts in this case, considering the use to which these articles were put, and the relations of the parties, we are constrained to believe that that rule does not apply.

For the reasons given above, we recommend that the judgment awarding damages against the defendant be reversed,

and the injunction so granted be modified as to allow the defendant to remove the pump.

By the Court: It is so ordered.

All the Justices concurring.