NOT DESIGNATED FOR PUBLICATION

No. 117,045

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Equalization Appeal of COFFEYVILLE RESOURCES NITROGEN FERTILIZERS, L.L.C., for the Year 2008 in Montgomery County, Kansas.

MEMORANDUM OPINION

Appeal from Board of Tax Appeals. Opinion filed September 28, 2018. Affirmed.

*James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, and *Jeffery A. Jordan*, of the same firm, of Wichita, for appellant.

*Jarrod C. Kieffer* and *Lynn D. Preheim*, Stinson Leonard Street LLP, of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and LORI BOLTON FLEMING, District Judge, assigned.

PER CURIAM:  Determining whether an asset is personal property or a fixture for taxing purposes requires consideration of three factors:  (1) an item's annexation to the realty; (2) the item's adaptation to the use of that part of the realty with which it is attached; and (3) the intention of the party making the annexation. *In re Equalization Appeals of Total Petroleum, Inc.*, 28 Kan. App. 2d 295, 299-300, 16 P.3d 981 (2000). The parties, Coffeyville Resources Nitrogen Fertilizers, L.L.C. (CRNF) and Montgomery County (the County), disagree whether 699 assets at CRNF's plant should be classified as personal property or fixtures. The Board of Tax Appeals (BOTA) held that all but 17 of the assets were personal property, and the County appealed. We find that the evidence supports BOTA's findings that the assets are personal property. They are bolted onto the foundations and easily movable, they were not specially designed to fit the land, and the

1

circumstances surrounding the plant's construction suggests that CRNF's predecessor intended for the assets to be treated as personal property. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

CRNF and the County dispute how 699 of CRNF's assets should be classified for taxation purposes. This is the second time the case has appeared before us. In the parties' first appeal, this court provided the underlying facts of the case. *In re Equalization Appeal of Coffeyville Resources Nitrogen Fertilizers, L.L.C.*, No. 107,705, 2013 WL 4046403, at *1-2 (Kan. App. 2013) (unpublished opinion) (*CRNF I*). We will merely summarize them here.

CRNF owns and operates a nitrogen fertilizer plant located on 15 acres of land in Montgomery County. CRNF purchased the plant in 2004 from Farmland Industries, Inc. (Farmland). Because Farmland originally constructed the fertilizer plant with proceeds from revenue bonds, it was exempt from property taxes for the first 10 years of operation. The exemption expired on December 31, 2007. The Montgomery County appraiser classified most of the plant's assets as real property for the tax year 2008. Real property includes not only the land itself but all buildings and fixtures as well. *Total Petroleum, Inc.*, 28 Kan. App. 2d 295, Syl. ¶ 4.

CRNF filed an equalization appeal with the Court of Tax Appeals (COTA). CRNF agreed that the land, the control building, and three large storage tanks at the fertilizer plant were properly classified as real property. It also agreed that the land was valued at $38,660 and the control building was valued at $385,256. CRNF and the County also agreed that certain assets located at the plant were properly classified as personal property. They disagreed, however, over whether 699 identified assets were personal or real property. COTA conducted a hearing over the course of seven nonconsecutive days

2

with numerous witnesses and hundreds of exhibits. After closing arguments, COTA took the matter under advisement.

In a 2-1 decision, COTA concluded that all 699 items were fixtures and properly classified as real property. In reaching its holding, COTA applied the three-part fixtures test used by this court in *Total Petroleum*, 28 Kan. App. 2d at 299-300. This test requires consideration of the following: (1) an item's annexation to the realty; (2) the item's adaptation to the use of that part of the realty with which it is attached; and (3) the intention of the party making the annexation. 28 Kan. App. 2d at 299-300. While COTA refers to the test as the *Total Petroleum* test, the three factors have long been used by Kansas courts. See, e.g., *Water Co. v. Irrigation Co.*, 64 Kan. 247, 252-53, 67 P. 462 (1902); *Cent. Branch Rld. Co. v. Fritz*, 20 Kan. 430, 435 (1878).

COTA noted that "most of the assets in dispute are movable, are equipped with design features that make them movable, and are in fact moved from time to time." Nevertheless, COTA held that the assets in dispute were annexed to the real estate. COTA explained that each asset was directly or indirectly attached to massive concrete structures designed to support the assemblage. COTA credited the County's expert, James Watson, in regards to the adaptation factor. It held that the facility was adapted to the land upon which it was built, and that "the assets in dispute were installed to carry out the particular purpose to which the real estate has been devoted, and each asset is important to the effective utilization of the real estate for that purpose." The third factor, intent, is assessed at the time of annexation. See *Total Petroleum*, 28 Kan. App. 2d at 301. As such, COTA assessed Farmland's intent and not CRNF's. It held "that Farmland intended for the assets to remain in place until they either wore out or became obsolete." COTA concluded that the County properly classified the assets in dispute as real property.

CRNF filed a petition for judicial review with this court. On appeal, it argued that COTA erred by failing to classify the disputed assets as personal property. CRNF

3

asserted that COTA erred by considering the plant as a "'single, huge machine'" instead of as 699 individual assets. *CRNF I*, 2013 WL 4046403, at *5. This court held that COTA correctly identified the *Total Petroleum* factors as the factors relevant to the analysis. *CRNF I*, 2013 WL 4046403, at *5. However, it held that COTA made inadequate findings to facilitate appellate review. The court stated:

"Unfortunately, COTA did not make any individualized findings regarding whether any particular assets in this dispute were fixtures. Rather, the majority simply considered all 699 assets together. A review of the record reveals that some of the assets in dispute are small and/or easily removable while other assets are very large and/or difficult to remove. Thus, based on the *Total Petroleum* factors, if the assets are considered individually or in groups of similar assets, it is likely that some of the disputed assets are fixtures—or real property—while others are personal property.

"It appears that the parties presented this case to COTA—at least initially—as an 'either/or' proposition. We note, however, that Coffeyville Resources specifically objected in post-hearing briefing to consideration of the fertilizer plant as a 'single, huge machine' instead of individual assets. Regardless, this court may consider a remand if the lack of specific findings precludes meaningful review. [Citations omitted.]

"Here, the majority's failure to make findings of fact and conclusions of law regarding the individual assets—or groups of similar assets—in dispute has made it difficult—if not impossible—for this court to meaningfully review whether COTA appropriately applied the *Total Petroleum* factors in this case. We, therefore, remand this matter to COTA to make specific findings and conclusions, based on the *Total Petroleum* factors, as to whether each asset—or group of assets—should be classified as real property or personal property." 2013 WL 4046403, at *5.

In 2014, the Kansas Legislature replaced COTA with the Board of Tax Appeals (BOTA). L. 2014, ch. 141, § 1; K.S.A. 2014 Supp. 74-2426. Thus, BOTA considered this court's mandate on remand.

4

On remand, BOTA held that all but 17 of the assets were personal property. In regards to annexation, BOTA noted that the personal property assets were bolted into place—not attached to the land in a permanent manner. And, each of the personal property assets was designed to be easily movable and was in fact routinely moved as part of CRNF's normal business practice. The personal property assets could be moved without damaging the land, foundations, or surrounding equipment. In its adaptation analysis, BOTA held that the personal property assets were "used to serve and support [CRNF]'s manufacturing operation and are, in no way, adapted to the land." It noted that many of the assets were of the "'off the shelf'" variety and could be used in other manufacturing operations. They were not designed to fit the land. For the intent prong, BOTA cited "numerous documents created at the time of the plant's construction establishing that the assets in dispute were intended to be personal property." Additionally, it found "nothing in the annexation or adaptation analyses . . . that indicates that any individual asset was placed in service with the intent to become a permanent fixture to the land." BOTA found that the 17 assets which it held to be real property fixtures were each too large to move in one piece and would have to be disassembled. BOTA had "not been persuaded that these assets can be taken apart and reassembled without significant damage to the equipment itself and, further . . . that it is economically feasible to remove and resale these items."

The County appealed.

ANALYSIS

*This court did not err in remanding this case after the first appeal.*

The County argues that this court committed an error of law by exceeding the statutory scope of review under the Kansas Judicial Review Act when it reversed COTA's decision and remanded the case. The County asserts that CRNF failed to ask COTA to

5

itemize its findings of fact to each individual asset. The County notes that K.S.A. 2017 Supp. 77-621 limits the ability of a party to obtain judicial review of an issue that was not raised before the agency. The County also asserts that CRNF failed to raise this issue before the Court of Appeals. The County then cites the well-known rule that an issue not briefed is deemed waived or abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Given these rules, the County concludes that it was inappropriate for this court to remand the case with instructions "to make specific findings and conclusions, based on the *Total Petroleum* factors, as to whether each asset—or group of assets—should be classified as real property or personal property." *CRNF I*, 2013 WL 4046403, at *5.

CRNF argues that the County is precluded from relitigating this issue under the law of the case doctrine. CRNF also argues that it properly raised challenges to COTA's factual findings.

"Whether the law of the case doctrine bar[s] a party from relitigating an issue is a legal question over which an appellate court has unlimited review." *State v. Parry*, 305 Kan. 1189, 1194, 390 P.3d 879 (2017).

The law of the case doctrine provides that "once an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice." *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998). Thus, when a second appeal is brought in a case, "the first decision is generally the settled law of the case on all questions involved in the first appeal and reconsideration will not normally be given to those questions." *Parry*, 305 Kan. at 1195. Here, the County is arguing that CRNF did not meet the burden necessary to justify reversal of COTA's decision. However, this court has already determined that reversal and remand was necessary. Therefore, the law of the case doctrine applies and the prior decision will not be revisited unless clearly erroneous.

6

The County argues that this court's decision to remand for specific findings in the first appeal was erroneous because no challenge to COTA's fact-finding was properly before the court. However, CRNF did not need to challenge COTA's fact-finding for this court to remand the case. CRNF was actually challenging COTA's application of the law, the three *Total Petroleum* factors, to the facts. This is apparent from CRNF's brief at the time, in which it argued that "COTA applied . . . the three-part fixtures test incorrectly to the facts of the case, facts that were either part of the Court's own holdings or were controverted in the record." Further CRNF argued that "[e]ach asset must be analyzed individually." CRNF also argued that COTA "misinterpreted the law and misapplied the law to the facts" in a motion for reconsideration filed after COTA entered its order. This court held that COTA did not correctly apply the law because it considered the assets as a "'single, huge machine'" instead of as 699 individual assets. *CRNF I*, 2013 WL 4046403, at *5. Because of COTA's failure to analyze the disputed assets individually, this court was unable to give meaningful review to the issue of whether the disputed assets were fixtures or personal property. It is appropriate for this court to "consider a remand if the lack of specific findings precludes meaningful review." *Dragon v. Vanguard Industries*, 282 Kan. 349, 355, 144 P.3d 1279 (2006).

The County argues that rule allowing this court to remand for specific findings was inapplicable in the first appeal. It asserts that the rule was "derived from cases in which the Kansas Supreme Court exercised its constitutionally created supervisory authority over inferior courts and power to adopt and enforce court rules governing the administration of justice in the courts." Because COTA is an administrative body, the County argues that applying the rule in its situation "violates the separation of powers and is unconstitutional." However, the Kansas Supreme Court has held that "[t]he appropriate remedy for inadequate findings in a final order of an administrative agency is to remand for additional findings of fact and conclusions of law." *Jones v. Kansas State University*, 279 Kan. 128, 142, 106 P.3d 10 (2005). The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is

7

departing from its previous position. *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015), *rev. denied* 303 Kan. 1078 (2016).

We conclude that this court properly remanded the case for adequate findings to facilitate meaningful review of the issue of whether the disputed assets were personal property or fixtures.

*BOTA complied with this court's mandate on remand.*

The County argues that BOTA failed to comply with this court's mandate on remand. Determining whether the district court complied with the mandate presents a question of law over which this court exercises unlimited review. *Edwards v. State*, 31 Kan. App. 2d 778, 780, 73 P.3d 772 (2003).

In the first appeal, this court could not review whether there was substantial evidence to support COTA's classification of the disputed assets because COTA applied the law incorrectly. The error occurred because COTA considered the 699 individual assets as a "'single, huge machine'" for purposes of applying the *Total Petroleum* test. *CRNF I*, 2013 WL 4046403, at *5. COTA should have applied the test to the assets as individual assets and not considered them as a conglomerate. This court remanded the case for COTA "to make specific findings and conclusions, based on the *Total Petroleum* factors, as to whether each asset—or group of assets—should be classified as real property or personal property." *CRNF I*, 2013 WL 4046403, at *5. On remand, BOTA identified 17 assets as real property. It classified the remaining 682 assets as personal property. BOTA considered the assets as individual assets, but lumped the 682 personal property assets together for the purposes of applying the *Total Petroleum* test rather than performing a separate analysis for each individual asset.

8

The County interprets the remand to require BOTA to apply a separate *Total Petroleum* analysis to each asset. It asserts that BOTA's findings "provide[] no more specific basis for this court's appellate review than it had before." CRNF agrees that "BOTA did not specifically break out its analysis and provide a separate individual analysis for each of the 699 assets." However, it asserts that "[t]he remand mandate did not require such an effort." It states that BOTA's decision complied with the mandate because BOTA reviewed the assets and determined that the factors applied exactly the same to each of the remaining 682 personal property assets. This is consistent with CRNF's argument before BOTA, in which it argued that the facts relevant to the *Total Petroleum* analysis were applicable to each and every individual asset.

BOTA sufficiently complied with the orders on remand. This court now has the findings it needs to determine whether substantial evidence supports BOTA's holdings. BOTA held that the personal property assets shared several similarities. For example, in the annexation analysis BOTA noted that each and every one of the personal property assets was bolted in place and readily movable. Each asset possessed design features that made it readily movable, and the plant itself was equipped with various mechanisms to allow for ready removal of the assets. The assets were routinely moved by CRNF, and CRNF maintained a fleet of equipment to allow for moving the assets. Each asset could be moved without damaging or removing the foundations, underlying land, or other equipment. And, there was an active market of brokers and sellers specializing in the acquisition, sale, and relocation of used industrial assets like the ones BOTA found to be personal property assets. The County could counteract this holding on appeal by pointing to evidence in the record that showed that a particular asset did not share these features, or that these features do not make an asset personal property.

*BOTA'S decision did not impermissibly weigh evidence or redetermine witness credibility.*

*The position of the parties is outlined.*

COTA heard the live testimony presented by the parties before the County's first appeal. By the time the case was remanded, COTA had been renamed BOTA and its membership had changed. See L. 2014, ch. 141, § 1. The County argues that BOTA reweighed evidence and redetermined witness credibility on remand, and that this was impermissible because none of the BOTA members witnessed the live testimony.

In its adaptation analysis, COTA held that "the assets in dispute each may be useful apart from the subject facility" but that "they would not be of comparable utility elsewhere without considerable site preparation and extensive engineering work at the new location." COTA cited the County's expert, Watson, in support of this holding. The County contrasts this with BOTA's opinion, which states:

> "In regard to all of our findings and conclusions, the Board finds [CRNF]'s witnesses—specifically, Neal Barkley, CRNF Plant Manager; Kevan Vick, CRNF Executive Vice President and Fertilizer General Manager; and Kamaya Manesh, Farmland Asset Trust Administrator—provided testimony demonstrating detailed knowledge of the day-to-day operation of the subject plant, as well as the acquisition, operation, and market for industrial equipment such as the assets in dispute that was collectively superior to that of the witnesses who appeared for the County."

The County asserts that this reweighing of evidence and redetermination of witness credibility rendered BOTA's decision invalid. CRNF makes three arguments in reply. First, it argues that the County waived its right to make this argument by failing to raise the issue below. Second, it argues that BOTA's findings on remand were not contrary to

10

COTA's original findings. Third, it argues that the County cites no relevant legal authority in support of its position.

*We exercise unlimited review over questions of law.*

Neither party proposes a standard of review when examining whether an agency engaged in illegal fact-finding. It does not appear that any Kansas cases have directly addressed this issue. However, determining whether BOTA engaged in illegal fact-finding naturally presents a question of law. This court exercises unlimited review over such questions. See *Presbyterian Manors, Inc. v. Douglas County*, 268 Kan. 488, 492, 998 P.2d 88 (2000).

*The County preserved this issue for appeal.*

CRNF argues that the County never raised this issue below, either before BOTA's decision or in a motion for reconsideration so it has failed to properly preserve the issue for appeal. "In an appeal from an administrative agency decision, one is limited to the issues raised at the administrative hearing." *In re Tax Appeal of Panhandle Eastern Pipe Line Co.*, 272 Kan. 1211, 1235, 39 P.3d 21 (2002).

The County asserts that it did raise the issue. And, a review of the record shows that the County did raise the issue. The parties each proposed findings of fact and conclusions of law, and a series of responses and replies followed. In one reply, the County specifically argued that there was no way for BOTA to reweigh the evidence. The County asserted that "[a]t every turn, and on each element of the three part test, CRNF asks this Board to reweigh the evidence that was heard by COTA and reach a different conclusion." Additionally, the County asserted that CRNF "directly asks this Board to evaluate the testimony of its expert, John Jenkins, and find it to be more credible than that of the County's expert, James Watson, again directly contrary to the credibility

11

determination that COTA made regarding their testimony . . . ." The County then asked: "How can this Board be expected to do what CRNF requests, when it did not hear the testimony and observe the witnesses and their credibility?" Similar concerns were raised in other filings. This was sufficient to preserve the issue.

*BOTA did reweigh evidence and redetermine witness credibility.*

CRNF argues that BOTA's findings of fact on remand were not contrary to COTA's findings of fact. It asserts that "[t]he underlying facts in this matter are not in dispute." However, this misses the point of the County's argument. The County is concerned about reweighing the evidence and redetermining witness credibility.

There is some evidence that BOTA reweighed the evidence. For example, during the adaptation analysis COTA held that "[a]lthough the assets in dispute each may be useful apart from the subject facility, according to the evidence, they would not be of comparable utility elsewhere without considerable site preparation and extensive engineering work at the new location." To the contrary, BOTA held that the assets it deemed personal property "are generic, off-the-shelf, and can be utilized in a variety of manufacturing applications." Another example arose in the adaptation analysis. There, COTA held: "Based on the weight of the evidence, we find an absence of proof that Farmland annexed the assets in dispute with the intention that they retain their character as items of personal property." BOTA held the opposite—that nothing indicated "that any individual asset was placed in service with the intent to become a permanent fixture to the land." These discrepancies could be explained by the fact that COTA was applying the *Total Petroleum* factors to the factory as a whole as opposed to 699 individual assets. But, they still provide some support for the County's argument that BOTA reweighed evidence.

12

Furthermore, BOTA clearly favored the testimony of CRNF's witnesses—Neal Barkley, Kevan Vick, and Kamaya Manesh—over that of the County's witnesses. BOTA characterized CRNF's witnesses' knowledge as "collectively superior to that of the witnesses who appeared for the County." COTA, on the other hand, found that the County's witness was more credible for purposes of the adaptation prong. This may suggest that BOTA reevaluated witness credibility.

But that said, at the heart of the varied analyses was COTA's treatment of the assets combined as a single unified factory operation versus BOTA's focus on the individual characteristics of each asset—which is what it was instructed to do by this court upon remand. We agree with CRNF that the "difference in factual findings is not one of witness credibility, but rather one of application of the uncontroverted facts to the correct legal standard." It was not a matter of which witnesses were telling the truth and which witnesses were lying. If such was the case, we agree that witnessing the demeanor of the witnesses would be crucial. It was a matter of which witness was properly applying the facts to the *Total Petroleum* factors. BOTA found CRNF witnesses had superior knowledge concerning the day-to-day operation of the plant as well as the acquisition, operation, and market for industrial equipment—individual assets. This knowledge became more important as BOTA examined the individual nature of the assets on remand. COTA, instead, relied on County expert Watson's testimony that under the adaptation prong of *Total Petroleum* the entire facility was adapted to the land and the land adapted to the facility, so it must all be treated as real property. That theory was rejected in *CRNF I*. On remand, BOTA was advised to examine the individual assets. In *CRNF I*, this court recognized and in fact anticipated that such a review may result in different findings regarding the assets.

"Unfortunately, COTA did not make any individualized findings regarding whether any particular assets in this dispute were fixtures. Rather, the majority simply considered all 699 assets together. A review of the record reveals that some of the assets

13

in dispute are small and/or easily removable while other assets are very large and/or difficult to remove. Thus, based on the *Total Petroleum* factors, if the assets are considered individually or in groups of similar assets, it is likely that some of the disputed assets are fixtures—or real property—while others are personal property." *CRNF I*, 2013 WL 4046403, *5.

Even COTA recognized in its decision that "most of the assets in dispute are moveable, are equipped with design features that make them movable, and are in fact moved from time to time." It simply concluded that all these moving parts were interconnected and function as one working system causing them to conclude it should all be classified as real property.

> *But BOTA did not* impermissibly *reexamine and evaluate the record of the proceedings before COTA.*

Assuming that BOTA did in fact reweigh evidence and reevaluate witness credibility, and that the County preserved the issue for appeal, the question of whether BOTA's actions are permissible remains. The County argues BOTA's actions were not permissible because it did not hear the trial testimony and it cannot substitute its judgment for the tribunal that did—COTA. CRNF argues that there is no legal authority for the County's position. The County cites three cases in support of its argument, so these will be examined.

First, the County cites *Hudson v. Kansas Public Employees Retirement System Bd.*, 53 Kan. App. 2d 309, 388 P.3d 597 (2016). The County asserts that *Hudson* stands for the principle that BOTA members cannot substitute their judgment for that of COTA. However, this case does not stand for such a proposition.

In *Hudson*, John Hudson applied for disability through the Kansas Public Employees Retirement System (KPERS) on the basis that he had post-traumatic stress

14

disorder (PTSD). KPERS denied his claim and Hudson requested an administrative hearing. Hudson submitted medical reports from three doctors who had personally examined him and diagnosed him with PTSD. KPERS sent Hudson's application, doctors' reports, and medical records to Dr. Guillermo Ibarra, its consulting physician for psychiatric claims. Dr. Ibarra did not perform an examination of Hudson, nor talk to Hudson or his three treating physicians. After reviewing the records, Dr. Ibarra concluded that Hudson did not have a disabling case of PTSD. Hudson testified live at the administrative hearing, and Dr. Ibarra and Hudson's three treating physicians testified by deposition. The administrative law judge (ALJ) denied Hudson's application for disability benefits, and the Public Employees Retirement System Board affirmed. The Board relied heavily on Dr. Ibarra's conclusions that Hudson and his three treating physicians were not credible. Hudson appealed.

The district court reversed the Board, and this court affirmed the district court decision. 53 Kan. App. 2d at 315, 323. The primary reason for reversal was that the Board relied too much on Dr. Ibarra's credibility conclusions. 53 Kan. App. 2d at 316, 319. This court noted "the value of actual observation of the witness when credibility determinations are made." 53 Kan. App. 2d at 317. Because the Board "did not observe testimony of Hudson's treating physicians or Dr. Ibarra, it was near impossible for the Board to make valid credibility determinations solely on the basis of deposition testimony." 53 Kan. App. 2d at 317. The Board failed to explain why it found Dr. Ibarra's deposition more persuasive than the other testimony. This court held that "[t]he reliance by the Board upon Dr. Ibarra's deposition testimony, without explanation, was based on a determination of fact that [was] not supported by the record as a whole . . . ." 53 Kan. App. 2d at 319.

*Hudson* does not support the County's argument in this appeal. In fact, it supports the idea that an administrative body may make credibility determinations without live testimony as long as its determinations are supported by the record. The *Hudson* Board's

15

credibility determination could have been affirmed had the Board supported its determination with sufficient evidence.

The County also relies on *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 885 P.2d 1233 (1994). There, Sunflower Racing appealed a BOTA decision and argued that BOTA was improperly constituted when it ruled on the case. Only one BOTA member heard all of the evidence presented. Two other members were present for most of the evidence. Only two of the three BOTA members who heard the evidence participated in the final decision. Three BOTA members who had participated in the final decision were appointed after the case had been heard. Sunflower "argued that it was not preferable for panel members who were not assigned or could not participate in the hearing to read a transcript of the evidence presented at the hearing as opposed to actually hearing the evidence and questioning the witnesses." 256 Kan. at 430. But, the Kansas Supreme Court held that Sunflower failed to object to the arrangement and was thus precluded from raising the issue on appeal. 256 Kan. at 440. *Sunflower Racing* is not persuasive in this appeal because the court never reached the issue presented—whether it was proper for BOTA members to participate in a decision if they had not seen the presentation of the evidence.

Finally, the County cites *In re Equalization Appeal of Krueger*, No. 108,452, 2013 WL 4046463 (Kan. App. 2013) (unpublished opinion). There, Karen Krueger appealed a COTA decision adopting Woodson County's ratings and valuations of her residential property. One of the issues she raised was whether successor COTA judges could issue an order in a case for which they were not present at the hearing. Only one of the three COTA judges who signed the order in her case was present at the evidentiary hearing. The other two judges had been confirmed after the hearing. This court framed the issue as "whether successor COTA judges may issue an order in a case for which they were not present at the hearing." 2013 WL 4046463, at *10.

16

In deciding this issue, the court in *Krueger* found "guidance in Kansas cases that have addressed the issue of whether a successor or substitute judge may hear a jury trial or issue orders on motions for a new trial where another judge was originally appointed to the case, as well as in the Kansas Rules of Civil Procedure." 2013 WL 4046463, at *10. For example, the court noted "K.S.A. 43-168 provides that if a judge is unable to proceed with a jury trial, another judge assigned to the court may proceed with and finish the trial 'upon certifying that he [or she] has familiarized himself [or herself] with the record of the trial.'" 2013 WL 4046463, at *10. This court concluded that "[t]he primary concern in resolving each of these cases was whether the successor judge adequately familiarized himself or herself with the record before performing any judicial duties." 2013 WL 4046463, at *11. The successor judges in Kreuger's administrative appeal had access to the evidence and the record. Therefore, the court concluded that "the successor judges could properly perform any duties of the court, including signing the order of the decision of COTA." 2013 WL 4046463, at *11. Like *Hudson*, *Krueger* contradicts rather than supports the County's argument on this point. *Krueger* shows that successor judges can make fact-intensive decisions as long as they are familiar with the record.

*In re Marriage of Salien*, No. 88,658, 2003 WL 22532928 (Kan. App. 2003) (unpublished opinion), provides another example of the principle that successor judges must only familiarize themselves with the record before rendering judgment. That case involved issues stemming from the divorce of Alta and Jean Salien. The parties divorced in 1979, but resumed cohabitation within two years of the divorce. Alta filed a motion "alleging the couple had become remarried under common law, or, in the alternative, that the court should use its equitable powers to divide the couple's property." 2003 WL 22532928, at *1. Judge William Madden presided over a hearing and concluded that the parties were not common-law married. He reserved the issue of equitable division of the property to a later date. However, before rendering a decision Judge Madden recused himself and Judge Edward Bouker took his place. Alta filed a motion for a new trial, arguing that she was entitled to a new trial under K.S.A. 60-263. This statute gave a

17

successor judge discretion to grant a new trial where the original judge is unable to continue due to death, sickness, or other disability. K.S.A. 60-263. The successor judge denied her motion, and she appealed. On appeal, Alta made an argument similar to the County's—that Judge Bouker could not adequately assess witness credibility from the record. This court rejected her argument, holding that "Judge Bouker took sufficient steps to become familiar with the case." 2003 WL 22532928, at *3.

There is no indication here that the BOTA judges failed to familiarize themselves with the record. In fact, BOTA received new proposed findings of fact and conclusions of law, asked for some additional assistance from the parties in obtaining master copies of some spreadsheets used to create exhibits in the case—having noted some exhibits that it could not reconcile—and heard oral argument. BOTA stated clearly and unequivocally in its order that it reviewed all the evidence in the record.

In sum, we find that BOTA's actions in hearing and deciding this case were permissible under the unique facts presented and the directions from this court on remand.

*BOTA's decision is supported by substantial evidence.*

The County makes a number of arguments that BOTA's decision was not supported by substantial evidence. The County attacks BOTA's application of each prong of the *Total Petroleum* test. The County also argues that BOTA failed to consider the record as a whole because it did not give credit to COTA's determinations of witness veracity. The County also makes a few arguments which are reiterations of the other issues raised in this appeal. For example, it argues that BOTA impermissibly reweighed evidence and reassessed witness credibility and that BOTA did not comply with the mandate. Finally, the County argues that this court's opinion in the first appeal prejudiced BOTA's fact-finding on remand. Each argument will be addressed in turn.

18

BOTA's decisions are reviewable under the Kansas Judicial Review Act (KJRA), which defines the proper scope of review. K.S.A. 2017 Supp. 77-621. Appellate courts review BOTA's factual findings to ensure that they are supported by substantial evidence in light of the record as a whole. K.S.A. 2017 Supp. 77-621(c)(7). "'[I]n light of the record as a whole'" includes evidence both supporting and detracting from the agency's finding. K.S.A. 2017 Supp. 77-621(d). It includes "any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact." K.S.A. 2017 Supp. 77-621(d). This court "shall not reweigh the evidence or engage in de novo review." K.S.A. 2017 Supp. 77-621(d). While the County asserts it is challenging the sufficiency of BOTA's evidentiary findings, it appears that the County also contests the application of the law to the facts. This court has unlimited review over issues of law. See *Presbyterian Manors, Inc.*, 268 Kan. at 492.

*We examine BOTA's application of the* Total Petroleum *factors.*

The County argues that substantial evidence does not support BOTA's findings in its application of the *Total Petroleum* factors. *Total Petroleum* provided three considerations in determining whether personal property becomes a fixture: (1) annexation to the realty; (2) adaptation to the use of that part of the realty with which it is attached; and (3) the intention of the party making the annexation. 28 Kan. App. 2d at 299-300. Each factor will be examined.

*Annexation*

Annexation is "[t]he act of attaching; the quality, state, or condition of being attached." Black's Law Dictionary 108 (10th ed. 2014). In regards to this prong, courts generally consider whether property can be removed without causing damage to the real estate. See *Stalcup v. Detrich*, 27 Kan. App. 2d 880, 886-87, 10 P.3d 3 (2000). For

19

example, in *Stalcup* this court had to determine whether a metal building was a fixture. The building was 40 feet by 80 feet, and attached to a concrete slab with bolts. The court held that the building was not annexed to the real estate, because "although it would take some effort, the building could be removed by detaching the bolts and removing the metal sheeting" with no damage to the real estate. 27 Kan. App. 2d at 886. *Stalcup* can be contrasted with *Total Petroleum*. There, a refinery's property was firmly attached to the land and could only be removed with great effort. The tanks at the refinery had to be pieced together with sheet metal delivered by semi-trucks. The metal was welded together until the tanks had walls 3 inches thick. To remove the tanks, they would have to be cut down piece by piece. The towers at the refinery were built 20 feet into the ground and weighed as much as 175,000 pounds. Additionally, the refinery property was interconnected. This led the Court of Appeals to conclude that the refinery property was annexed to the real estate. 28 Kan. App. 2d at 300.

Whether property can be readily replaced also factors in to the annexation analysis. See *In re Farmland Indus., Inc.*, 298 B.R. 382, 387-88 (Bankr. W.D. Mo. 2003) (applying Kansas law to determine whether certain equipment was personal property or real property). The Kansas Supreme Court favorably cited a New York case for this proposition. See *Lumber and Grain Co. v. Eaves*, 114 Kan. 576, 580-81, 220 P. 512 (1923) (citing *Ford v. Cobb*, 20 N.Y. 344 [1859]). There, the issue was whether salt kettles embedded into brick arches were personal property or fixtures. The kettles could be removed only by "tearing off a portion of the upper bricks of the arch, and prying the kettles out by a plank and bars." *Ford*, 20 N.Y. at 345. The kettles were removed and reset in the arch every year in the course of the salt works' business. The New York court held that the kettles were personal property even though they were embedded in the brick because they could be removed and replaced without damage to their condition or value. 20 N.Y. at 351-52.

Here, BOTA found that most of CRNF's assets were personal property for several reasons. It held that the evidence showed that the property was not attached to the land in a permanent manner, but rather bolted into place and readily movable. The assets were designed to be readily movable, and CRNF routinely moved the assets as part of its normal business practice and without damaging the foundations, underlying land, or other equipment. Furthermore, BOTA found that there was an active industry of people specializing in the acquisition, sale, and relocation of used industrial assets like those at issue in the case. The evidence supports BOTA's findings. The assets are supported by concrete foundations, but the assets themselves are merely bolted on. They are routinely moved for maintenance or repair. The larger assets have lifting lugs to assist in moving them. Smaller assets were specifically designed so that they could be easily removed and replaced. The assets can be moved without damaging the foundations or surrounding equipment.

Still, the County maintains that the "assets CRNF contended were movable and not annexed or adapted to the real property . . . *could not* be removed without lengthy costly effort and *would not* be removed because they were integral parts of the plant." The County's argument is focused on the "single, huge machine" theory. It would be costly and time consuming to remove all of the assets from the property. But the analysis should be focused on each individual asset.

The County also argues that the assets are constructively annexed to the land. Constructive annexation has not been well-defined in Kansas. The concept is discussed in American Jurisprudence, which BOTA cited in its analysis. It provides:

> "[C]onstructive annexation may be found when the object, although not itself attached to the realty, comprises a necessary, integral, or working part of some other object which is attached. Constructive annexation to the realty occurs when removal leaves the personal

property unfit for use so that it would not of itself and standing alone be well adapted for general use elsewhere." 35A Am. Jur. 2d, Fixtures § 10.

The County argues that both Watson and Barkley's testimony established that removal or failure of an asset would render the principal part of the fertilizer plant unfit for use and that the assets "are primarily of limited, specialized uses in refineries and similar plants."

While there are several sections in CRNF's plant, its primary purpose is to produce urea ammonium nitrate (UAN). However, Barkley testified that the ammonia plant could be operated without the UAN plant. There have been occasions in the plant's history where it has produced ammonia but not UAN, and when it has produced UAN but not ammonia. Therefore, failure of an asset would not render the plant unfit for use.

Even if loss of an asset did render the plant inoperable, the testimony established that the assets would be fit for use in other plants, and for other purposes.

For example, Barkley testified that the Selexol removal system could be "put into a refinery, a natural gas processing plant or any number of plants and remove carbon dioxide and $H_2S$." The compressors could be used in any plant that utilizes compressed air. The pumps can be picked "out of a book" and are not specifically for use in a UAN plant. Many of the assets were in fact relocated from the California plant, where they were not used to produce UAN.

CRNF notes that Kansas caselaw has never "held that assets used in a production process become constructively annexed by virtue of incorporation into the production process." The County has failed to show that the mere use of an asset in a large plant or manufacturing operation renders it annexed to the land. BOTA's findings are consistent with traditional annexation considerations, and substantial evidence supports its findings on this factor.

22

*Adaptation*

The second part of the test is "'adaptation to the use of that part of the realty with which it is attached." *Total Petroleum*, 28 Kan. App. 2d at 299 (quoting *Stalcup*, 27 Kan. App. 2d at 886). The caselaw shows that there are a couple of ways to satisfy this prong of the test. One is if the assets themselves are adapted to fit the land. See, e.g., *Total Petroleum*, 28 Kan. App. 2d at 301. The other is if the assets are meant to benefit the land itself, as opposed to benefitting some other interest. *A. T. & S. F. R. Rld. Co. v. Morgan*, 42 Kan. 23, Syl. ¶ 3, 21 P. 809 (1889). Each of these ways of showing adaptation will be examined.

The first inquiry is whether the assets were adapted to fit the land. In *Total Petroleum* the assets, tanks, "were constructed using sheet metal, which was welded to the ground, and that their side walls were put up one sheet at a time until each was 3 inches thick." 28 Kan. App. 2d at 297. Additionally, "the tanks were not portable, were never moved, and would have to be cut down a piece at a time to be hauled away." 28 Kan. App. 2d at 297. This court held that the tanks were part of the realty because they were "specifically constructed for placement on that particular land" and because their "removal would result in environmental contamination that would have to be treated." 28 Kan. App. 2d at 301. This can be contrasted with *Stalcup*, where a metal building bolted to a concrete foundation was personal property because the building was the type "frequently found on farms all across the state and that they are not particular to the real estate upon which they sit." 27 Kan. App. 2d at 887; see also *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 695-96, 676 P.2d 84 (1984) (holding that a liquid propane storage tank, supported by concrete piers extending 6 feet into the ground, was personal property because the tank was not buried in the ground, was easily movable, and was "as usable at another location as on the land in question").

23

BOTA held that "the uncontroverted evidence indicates that the personal property assets, when examined individually . . . are, in no way, adapted to the land." It noted that many of the assets were "'off-the-shelf'" and could be used in a variety of manufacturing applications. BOTA further held that none of the assets "were designed to fit the subject land nor is there any rational reason to believe these assets could not easily be re-tasked in another location." BOTA rejected the idea that the concrete foundations, which were clearly adapted to the land, were part of the assets.

The County argues that BOTA should have considered the concrete foundations as evidence that the assets were adapted to the realty. However, this assertion is contrary to the caselaw as demonstrated by *Stalcup* and *Porter*. In each of those cases, the assets were supported by concrete foundations. And, in each case the court held that the assets were not adapted to the land. The County does not argue that the personal property assets were fused to the land or specifically constructed to fit the land as in *Total Petroleum*. The evidence shows that the assets could be used on any piece of land, given the proper foundation, and that they could be used to make products other than UAN.

The second inquiry is whether the assets are meant to benefit the land itself, or some other interest. *Morgan*, 42 Kan. at 29. "The test of whether real estate is benefited by the act of annexation has been repeatedly applied by the courts, to determine whether the chattel annexed became a fixture or not." 42 Kan. at 29. In *Morgan,* a railroad company installed a well, pump, and boiler-house on A.O. Morgan's property, believing that it owned the land. Steam from the boiler operated the pump in the well. The company intended to use the well to provide water to supply its engines. Morgan sold the land, and the eventual owner discovered that the company's assets were on his property. The new owner forbade the company from coming onto his property, and prevented the company from using the assets. One night, the company trespassed onto the owner's land and removed the boiler, damaging the boiler-house. The company did not remove the pump. The owner brought an action in district court, which held in part that the owner

24

was entitled to recover the value of the boiler and damages to the boiler-house, and that the pump belonged to the owner. The company appealed, arguing that the boiler and pump were not fixtures, and therefore, the owner was not entitled to damages or possession of either.

The Kansas Supreme Court noted in its analysis that "one of the tests of whether a chattel retains its character or becomes a fixture is the uses to which it is put. If it be placed on the land for the purpose of improving it and to make it more valuable, that is evidence that it is a fixture." 42 Kan. at 29. The court held that the pump and boiler did not benefit the owner's land, and that "the only value added thereto by placing a pump, boiler and boiler-house like those in controversy would be what they were worth as chattels." 42 Kan. at 29. The court concluded that the items were not fixtures, because the company "dug the well, put in the pump and boiler for the sole purpose of operating its railroad, and not to improve the land where the property was placed." 42 Kan. at 30.

An example of this principle is the "boiler in a building" illustration in the Personal Property Valuation (PVD) Guide. The PVD Guide is written pursuant to K.S.A. 2017 Supp. 79-505(a), which requires the director of property valuation to "adopt rules and regulations or appraiser directives prescribing appropriate standards for the performance of appraisals in connection with ad valorem taxation in this state." County appraisers must follow the guidelines in the performance of their duties. K.S.A. 2017 Supp. 79-1456(a). The "boiler in a building" example provides that "a boiler that heats a building is considered real property, but a boiler that is used in the manufacturing process is considered personal property."

The County asserts that the "boiler in a building" example "is not persuasive here." It argues that the assets all serve the purpose of improving the land, and "not some general manufacturing operation that could be conducted anywhere." However, as already discussed, there is nothing special about the assets that make them unfit for use in

25

other operations. Additionally, there is nothing unique about the land that requires the assets to remain there. Barkely testified that the assets could have been erected in some other location, and that there was nothing about the land that made it the only place the plant could operate. Substantial evidence supports BOTA's findings on this factor.

*Intent*

The final prong of the *Total Petroleum* test is the intention of the party making the annexation. 28 Kan. App. 2d at 299. Intention must be determined at the time of annexation. See 28 Kan. App. 2d at 301. "The intention of the party making the annexation of the article to the freehold must be deducted very largely from his acts and surrounding circumstances . . . ." *Water Co. v. Irrigation Co.*, 64 Kan. 247, 253, 67 P. 462 (1902). Intention can be "'inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which annexation has been made.'" *Eaves v. Estes*, 10 Kan. 314, 316-17 (1872) (quoting *Teaff v. Hewitt*, 1 Ohio St. 511, 530 [1853]).

The County makes a brief, one sentence argument that "[t]he self-serving declarations of the owner's employee could not be accepted as substantial evidence of intent to annex in the context of the record as a whole." The County fails to identify evidence that would show that the intent was to have the assets treated as fixtures. Generally, an issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc.*, 292 Kan. at 889. A point raised incidentally in a brief and not argued therein is also deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). Due to the County's failure to sufficiently address this issue, we deem it to be abandoned.

Moreover, even if we were to consider it, the County's argument fails. There is no indication in BOTA's opinion that it relied solely on the testimony of CRNF employees.

26

BOTA stated that it found "nothing in the annexation or adaptation analyses . . . that indicates that any individual asset was placed in service with the intent to become a permanent fixture to the land." BOTA noted that the assets were movable, and that the plant was designed so that the assets could be moved. And, the assets had been moved into and out of the plant for various reasons. This is consistent with the rule that intention can be inferred from the nature of the articles affixed and the structure and mode of annexation. In *Total Petroleum*, this court found that Total Petroleum intended the property to be fixtures because "[i]t was firmly affixed to the ground, and the property was interconnected in such a way that removal of any portion would be exceedingly laborious and complicated." 28 Kan. App. 2d at 301. Here, however, removal of an asset only requires unbolting it from the foundation or surrounding assets.

BOTA also considered that "numerous documents created at the time of the plant's construction establish[ed] that the assets in dispute were intended to be personal property." This included documents created for the purposes of the lease, Industrial Revenue Bond tax exemption, and for the ad valorem property tax. The record supports this finding. The County itself treated the property as personal property for the years prior to this dispute.

Substantial evidence supports BOTA's holding on this factor.

*Miscellaneous Arguments*

The County makes a number of other miscellaneous arguments that BOTA's decision is not supported by substantial evidence which we will briefly address.

First, the County argues that BOTA came to a different result than COTA because it impermissibly reweighed evidence and witness credibility. This argument was addressed above, and is not persuasive. BOTA came to a different result because it was

27

applying the law differently. Many of the basic facts were not in dispute. Second, the County argues that BOTA failed to comply with this court's mandate to consider the assets individually, so this court is precluded from determining whether BOTA's decision is supported by substantial evidence. This argument has also been addressed.

The County also argues that BOTA did not consider the record as a whole because it did not consider the determinations of veracity made by COTA. The County cites the rule that BOTA's decision must be supported by substantial evidence when viewed in light of the record as a whole. See K.S.A. 2017 Supp. 77-621(c)(7). It notes that "in light of the record as a whole" is defined as:

> "all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact." K.S.A. 2017 Supp. 77-621(d).

The County distorts the meaning of the statute in this argument. The statute puts forth the scope of review for appellate courts under the Kansas Judicial Review Act. It does not mandate that BOTA give deference to prior determinations of veracity. As already discussed, it was not error for BOTA to rely on different witnesses on remand.

Finally, the County argues that this court's opinion in *CRNF I* prejudiced BOTA's fact-finding. The County makes three points relevant to this argument. First, the County asserts that this court "said the *Total Petroleum* tests should be applied in light of the fact that *Total Petroleum* involved a stripped and abandoned refinery." And, that this court "suggested that only what's left after an improvement to real estate has been abandoned, stripped and salvaged is real property." The County argues that "[t]his statement

28

encouraged undue weight to evidence of whether and what assets could be removed and salvaged for some purpose someday in the unknown, and likely distant future."

The County does not include citations to the places in *CRNF I* where it alleges that this court made the prejudicial comparison. This is because this court did not make the statements that the County is asserting. To the contrary, at the beginning of its analysis this court specifically noted that "*Total Petroleum* is factually distinguishable from the present case" because the refinery in *Total Petroleum* had been shut down. *CRNF I*, 2013 WL 4046403, at *5. This court never made the suggestions the County is asserting, and thus did not prejudice BOTA's fact-finding process.

The County also argues that "this court, which is precluded by statute from reweighing evidence and determining credibility, stated that some of COTA's findings were 'probably wrong.'" Again, the County fails to cite to the portion of the *CRNF I* opinion where this court made such a statement. The statement does not appear in the opinion. At one point this court noted that "some of the assets in dispute are small and/or easily removable while other assets are very large and/or difficult to remove." *CRNF I*, 2013 WL 4046403, at *5. The court then stated: "Thus, based on the *Total Petroleum* factors, if the assets are considered individually or in groups of similar assets, it is likely that some of the disputed assets are fixtures—or real property—while others are personal property." *CRNF I*, 2013 WL 4046403, at *5. This does not show that this court reweighed evidence, as no one disputed that some of the assets were small and easy to move and some were large and would take more effort to move. As we have already discussed, the caselaw provides that assets which are easy to remove are more likely to be classified as personal property. It is not prejudicial for this court to say what the law provides.

Third, the County argues that "although the court didn't intend it, BOTA was clearly influenced by the argument on remand that the court's order for separate findings

29

of fact as to each asset required viewing each asset as separate." The County continues that "CRNF argued that this meant BOTA should give little or no heed or weight and credibility to the testimony regarding the nature and extent of the assets' integration into the structure and function of the entire plant as an improvement to real estate." This court clearly intended BOTA to view each asset as separate—that was the point of the remand. This court explicitly rejected the County's "single, huge machine" theory of viewing the assets. *CRNF I*, 2013 WL 4046403, at \*5. In the annexation analysis, BOTA considered how extensively the assets were ingrained into the real estate and found that the personal property assets could be removed easily as they were merely bolted together. In the adaptation analysis, BOTA did consider whether the assets improved the real estate or merely served a business interest, and concluded that it served a business interest. These findings were supported by substantial competent evidence.

*Conclusion*

Generally, all three factors—annexation, adaptation, and intent—must be met to show that an asset has lost its identity as personal property and become a fixture. 35A Am. Jur. 2d, Fixtures § 4. BOTA considered all three factors and concluded that 682 of the disputed assets were CRNF's personal property under each factor. Or stated another way, it found that none of the factors—let alone all three—supported a finding that the 682 disputed assets had lost their identity as personal property and become fixtures to the real property. Substantial evidence supports BOTA's holding, and accordingly, its decision is affirmed.